POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for the Meitav Funds and the
Teachers Funds*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CEMENT MASONS' AND PLASTERERS' LOCAL NO. 502 PENSION FUND, on behalf of itself and all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>INMODE LTD., MOSHE MIZRAHY, YAIR MALCA, SHAKIL LAKHANI, and SPERO THEODOROU,<br><br>　　　　　　　Defendants. | Case No. 2:24-cv-01219-MEMF-MRW<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF THE MEITAV FUNDS AND THE TEACHERS FUNDS FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF COUNSEL<br><br>DATE:  June 6, 2024<br>TIME:  10:00 a.m.<br>JUDGE:  Maame Ewusi-Mensah Frimpong<br>CTRM:  8B (1st Street Courthouse) |

# <u>TABLE OF CONTENTS</u>

I.  PRELIMINARY STATEMENT ..............................................................................1

II.  STATEMENT OF FACTS ...................................................................................3

III.  ARGUMENT ......................................................................................................6

    A.  THE FUNDS SHOULD BE APPOINTED LEAD PLAINTIFFS ...............6

        1.  The Funds Are Willing to Serve as Class Representatives ......................7

        2.  The Funds Have the "Largest Financial Interest" ...................................8

        3.  The Funds Otherwise Satisfy the Requirements of Rule 23
            of the Federal Rules of Civil Procedure....................................................10

        4.  The Funds Will Fairly and Adequately Represent the Interests
            of the Class and Are Not Subject to Unique Defenses...........................15

    B.  LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD
       BE APPROVED ..........................................................................................16

IV.  CONCLUSION..................................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997).................................................................................12

*Arora v. HDFC Bank Ltd.*,
    2:20-cv04140 (E.D.N.Y.) ......................................................................7

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ....................................................................11

*Backe v. Novatel Wireless, Inc.*,
    No. 08-CV-01689-H (RBB), 2008 U.S. Dist. LEXIS 100622
    (S.D. Cal. Dec. 10, 2008)................................................................2, 13

*Beck v. Maximus, Inc.*,
    457 F.3d 291 (3d Cir. 2006) ...........................................................11, 12

*China Agritech, Inc. v. Resh*,
    _ U.S. _, 138 S. Ct. 1800 (2018)........................................................13

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
    No. 11-CV-04003-LHK, 2012 WL 78780 (N.D. Cal. Jan. 9, 2012)............9

*Danis v. USN Communs., Inc.*,
    189 F.R.D. 391 (N.D. Ill. 1999)..........................................................11

*Feyko v. Yuhe Int'l Inc.*,
    No. CF 11-05511 DDP (PJWx), 2012 U.S. Dist. LEXIS 28040
    (C.D. Cal. Mar. 2, 2012) .................................................................2, 13

*Fischler v. Amsouth Bancorporation*,
    176 F.R.D. 583 (M.D. Fla. 1997) .......................................................10

*Genesee County Employees Retirement System v. Kornit Digital Ltd. et al.*,
    2:23-cv-00888 (D.N.J.).........................................................................8

*Gluck v. Cellstar Corp.*,
    976 F. Supp. 542 (N.D. Tex. 1997) ....................................................10

*Greebel v. FTP Software*,
   939 F. Supp. 57 (D. Mass. 1996) .................................................................... 10

*In re AudioEye, Inc.*,
   No. CV-15-163-TUC-DCB, 2015 U.S. Dist. LEXIS 193348
   (D. Ariz. July 31, 2015) ........................................................................... 3, 13

*In re Comverse Tech., Inc., Sec. Litig.*,
   2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ............................................... 9, 16

*In re Mylan N.V. Securities Litigation*,
   1:16-cv-07926 (S.D.N.Y.) ................................................................................ 8

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp.2d 286 (E.D.N.Y. 1998) ............................................................. 9, 10

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ..................................................................... 10

*In re Petrobras Securities Litigation*,
   No. 14-cv-09662 (S.D.N.Y.) ........................................................................ 16

*In re Regions Morgan Keegan Closed-End Fund Litig.*,
   No. 07-02830, 2010 U.S. Dist. LEXIS 132902
   (W.D. Tenn. Dec. 15, 2010) ...................................................................... 3, 13

*Klein v. Altria Group, Inc. et al*,
   No. 3:20-cv-00075 (E.D. Va.) ...................................................................... 17

*Knox v. Yingli Green Energy Holding Co.*,
   136 F. Supp. 3d 1159 (C.D. Cal. 2015) .......................................................... 9

*Lax v. First Merch. Acceptance Corp.*,
   1997 WL 461036 (N.D. Ill. Aug. 6, 1997) ................................................... 8, 9

*McCracken v. Edwards Lifesciences Corp.*,
   No. 8:13-CV-1463-JLS, 2014 U.S. Dist. LEXIS 2147
   (C.D. Cal. Jan. 8, 2014) .............................................................................. 14

*Meitav Dash Provident Funds and Pension Ltd. v. Spirit Aerosystems*
   *Holdings, Inc.*,
   4:20-cv-00054 (N.D. Okla.) ........................................................................... 7

*Mersho v. United States Dist. Court*,
    6 F.4th 891 (9th Cir. 2021) ................................................................................13

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*,
    No. 13-CV-05368-LHK, 2014 U.S. Dist. LEXIS 80141
    (N.D. Cal. June 10, 2014) ................................................................................13

*Nicolow v. Hewlett Packard Co.*,
    Nos. 12-05980 CRB *et al.*, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013) ...................9

*Osher v. Guess?, Inc.*,
    2001 WL 861694 (C.D. Cal. Apr. 26, 2001) ...............................................................16

*Riordan v. Smith Barney*,
    113 F.R.D. 60 (N.D. Ill. 1986) ............................................................................12

*Roofer's Pension Fund v. Papa*,
    2:16-cv-02805 (D.N.J.) ...................................................................................8

*Sayce v. Forescout Technologies, Inc.*,
    3:20-cv-00076 (N.D. Cal.) ...............................................................................8

*Xu v. FibroGen, Inc.*,
    No. 21-cv-02623-EMC, 2021 U.S. Dist. LEXIS 164034
    (N.D. Cal. Aug. 30, 2021) ...............................................................................14

**Statutes**

15 U.S.C. § 78u-4 ..............................................................................................*passim*

Private Securities Litigation Reform Act of 1995 .....................................................*passim*

Securities Exchange Act of 1934 ............................................................................1, 6, 11

**Rules**

Fed. R. Civ. P. 23 .................................................................................................*passim*

Movants Meitav Provident and Pension Funds Ltd. ("Meitav Provident") and Meitav Mutual Funds Ltd. ("Meitav Mutual" and, collectively with Meitav Provident, the "Meitav Funds"); and Kranot Hishtalmut Le Morim Tichoniim Morey Seminarim Ve Mefakhim Hevra Menahelet Ltd. and Kranot Hishtalmut Le Morim Ve Gananot Hevra Menahelet Ltd. (collectively, the "Teachers Funds" and, together with the Meitav Funds, the "Funds") respectfully submit this Memorandum of Law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) appointing the Funds as Lead Plaintiffs on behalf of a class (the "Class") consisting of all persons other than the above-captioned defendants ("Defendants") who purchased or otherwise acquired InMode Ltd. ("InMode" or the "Company") common stock between June 4, 2021, and October 12, 2023, both dates inclusive (the "Class Period"); and (2) approving Lead Plaintiffs' selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class in the above-captioned action (the "Action").

## I.    PRELIMINARY STATEMENT

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant who possesses the largest financial interest in the outcome of the action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).   The Funds, with losses of approximately $19,100,860 in connection

with their purchases of InMode common stock, have the largest financial interest in the relief sought in the Action to their knowledge.  *See* Declaration of Jennifer Pafiti in Support of Motion ("Pafiti Decl."), Exhibit ("Ex.") A.

Beyond their considerable financial interest, the Funds also meet the applicable requirements of Rule 23 because their claims are typical of absent class members and because they will fairly and adequately represent the interests of the class.  As sophisticated institutional investors, the Funds are paradigmatic lead plaintiffs under the PSLRA, and their appointment would advance the legislative purpose of "increasing the role of institutional investors in class actions" in order to "benefit shareholders and assist courts by improving the quality of representation in securities class actions."  H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* U.S.C.C.A.N. 730, 733.  For this reason, courts in this Circuit strongly prefer appointment of institutional investors to lead complex securities class actions.  *See, e.g.*, *Backe v. Novatel Wireless, Inc.*, No. 08-CV-01689-H (RBB), 2008 U.S. Dist. LEXIS 100622, at *12 (S.D. Cal. Dec. 10, 2008) (noting that movant was "the sort of lead plaintiff envisioned by Congress in the enactment of the PSLRA--a sophisticated institutional investor with a real financial interest in the litigation"); *Feyko v. Yuhe Int'l Inc.*, No. CF 11-05511 DDP (PJWx), 2012 U.S. Dist. LEXIS 28040, at *8 (C.D. Cal. Mar. 2, 2012) (appointing institutional investor as lead plaintiff, finding it to be "'exactly the type of sophisticated market participant[] Congress intended to take on the role of lead plaintiff following the

PSLRA's reforms'") (quoting *In re Regions Morgan Keegan Closed-End Fund Litig.*, No. 07-02830, 2010 U.S. Dist. LEXIS 132902, at *8 (W.D. Tenn. Dec. 15, 2010)); *In re AudioEye, Inc.*, No. CV-15-163-TUC-DCB, 2015 U.S. Dist. LEXIS 193348, at *13 (D. Ariz. July 31, 2015) (appointing as lead plaintiff "an institutional investor, which is precisely the kind of investor that Congress sought to encourage to assume a more prominent role in securities litigation with the enactment of the PSLRA's lead plaintiff provisions").

To fulfill their obligations as Lead Plaintiff and vigorously prosecute the Action on behalf of the class, the Funds have selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, the Funds respectfully request that the Court enter an Order appointing the Funds as Lead Plaintiffs for the class and approving their selection of Pomerantz as Lead Counsel for the class.

## II.    STATEMENT OF FACTS

InMode produces medical equipment, including devices purporting to offer body sculpting and other rejuvenation technologies.   InMode's target customers include dermatologists, dentists, obstetricians and gynecologists, and medical spas.

This matter arises from Defendants' material misrepresentations and omissions regarding the price at which InMode sold its devices, as well as InMode's compliance with U.S. Food and Drug Administration ("FDA") regulations.

Specifically, InMode misled investors regarding the pricing of, and demand for, its products. Despite making representations to the contrary throughout the Class Period, InMode heavily discounts almost every device it sells. In fact, the Company expects sales representatives to discount devices anywhere between 16% and 40% off the list price.

In addition, InMode's promotion of the off-label use of its products rendered its statements to investors regarding the Company's compliance with FDA regulations materially false and misleading.

Further, InMode misled investors by failing to submit required malfunction and injury reports to the FDA. FDA regulations require equipment manufacturers to report when a medical device malfunctions or causes a serious injury or death, within 30 days of becoming aware. Prior to 2023, InMode had not filed any such reports, despite the fact that dozens of personal injury lawsuits were filed against the Company during that time alleging injuries caused by InMode devices.

The truth began to emerge just before the market closed on February 17, 2023, when an investigative publication revealed that InMode threatened some customers with legal action over complaints made about the Company's devices and sales tactics. The

customers also stated that InMode offered to replace defective products on the condition of signing confidentiality agreements with non-disparagement clauses.  On this news, the price of InMode common stock declined $1.21 per share, from a closing price of $37.02 per share on February 17, 2023, to a closing price of $35.81 per share on February 21, 2023.

On October 12, 2023, before the market opened, InMode lowered its full-year revenue guidance, which the Company blamed on higher interest rates, tighter leasing approval standards, and bottlenecks in loan processing.

Later that same day, an investigative publication announced a forthcoming report on InMode, relating to the Company's statements to investors about pricing flexibility of products and margin consistency.  After the close of trading, the publication released that story, revealing that the Company had routinely and significantly discounted the prices of its devices throughout the Class Period.

In response to these disclosures, the price of InMode common stock declined $7.24 per share, or nearly 26%, from a closing price of $27.99 per share on October 11, 2023, to a closing price of $20.75 per share on October 13, 2023.

As a result of Defendants' wrongful acts and omissions, and the resulting decline in the market value of InMode common stock, the Funds and other Class members have suffered significant losses and damages.

## III.   ARGUMENT

### A.   THE FUNDS SHOULD BE APPOINTED LEAD PLAINTIFFS

The Funds should be appointed Lead Plaintiffs because, to their knowledge, they have the largest financial interest in the Action and otherwise meet the requirements of Rule 23.  Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of lead plaintiff in class actions brought under the Exchange Act.  The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice.  Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, the Funds satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Lead Plaintiffs for the Class.

### 1.    The Funds Are Willing to Serve as Class Representatives

On February 14, 2024, counsel for the plaintiff in the Action caused a notice to be published over *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against Defendants, and advised investors of InMode securities of the deadline to file a motion to be appointed as Lead Plaintiff. *See* Pafiti Decl., Ex. B.

The Funds have filed the instant motion pursuant to the Notice, and they have submitted Certifications, respectively signed by representatives duly authorized to bind the Meitav Funds and the Teachers Funds and enter into litigation on their behalf, attesting that they are willing to serve as representatives for the Class and to provide testimony at deposition and trial, if necessary. *See* Pafiti Decl., Ex. C.

The Funds are, in every respect, exactly the sort of well-managed, sophisticated institutional investors that Congress intended to fulfill the lead plaintiff role created by the PSLRA. The Meitav Funds are affiliates of Meitav Investment House, an Israeli investment house currently managing more than $75 billion. Meitav Provident is currently serving or has recently served as Lead Plaintiff or Co-Lead Plaintiff in the PSLRA actions *Arora v. HDFC Bank Ltd.*, 2:20-cv04140 (E.D.N.Y.), *Meitav Dash*

*Provident Funds and Pension Ltd. v. Spirit Aerosystems Holdings, Inc.*, 4:20-cv-00054 (N.D. Okla.), *In re Mylan N.V. Securities Litigation*, 1:16-cv-07926 (S.D.N.Y.), and *Roofer's Pension Fund v. Papa*, 2:16-cv-02805 (D.N.J.), while Meitav Mutual is currently serving as Lead Plaintiff in the PSLRA action *Sayce v. Forescout Technologies, Inc.*, 3:20-cv-00076 (N.D. Cal.).  The Teachers Funds, for their part, are institutional investors that manage various funds for the benefit of educators in Israel and are currently serving as Co-Lead Plaintiffs along with other institutional investors in the PSLRA action *Genesee County Employees Retirement System v. Kornit Digital Ltd. et al.*, 2:23-cv-00888 (D.N.J.).

### 2.      The Funds Have the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).

As of the time of the filing of this motion, the Funds believe that they have the largest financial interest of any of the Lead Plaintiff movants based on the factors articulated in the seminal case *Lax v. First Merch. Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997) (financial interest may be determined by (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the

approximate losses suffered).[1]  In accord with courts nationwide, these so-called *Lax* factors have been adopted by courts in the Ninth Circuit, including in this District.   *See, e.g.*, *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) ("District courts have typically considered the [*Lax*] factors to determine who has the largest financial interest[.]" (internal quotation marks and citations omitted)); *Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (same); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 11-CV-04003-LHK, 2012 WL 78780, at *3-*4 (N.D. Cal. Jan. 9, 2012) (same).  Of the *Lax* factors, courts in this Circuit tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA.  *See, e.g.*, *Knox*, 135 F. Supp. 3d. at 1163; *Nicolow*, 2013 WL 792642, at *4.

During the Class Period, the Funds collectively: (1) purchased 2,554,294 shares of InMode stock; (2) expended $92,951,477 on their purchases of InMode stock; (3) retained 1,510,227 of their shares of InMode stock; and (4) as a result of the disclosure of the fraud, suffered a loss of $19,100,860 in connection with their Class Period purchases of InMode stock.  *See* Pafiti Decl., Ex. A.  Because the Funds possess the largest financial interest in the outcome of this litigation, they may be presumed to be the "most adequate" plaintiffs.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

---

[1] *See also In re Olsten Corp. Sec. Litig.*, 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998). *Accord In re Comverse Tech., Inc., Sec. Litig.*, 2007 WL 680779, at *6-*7 (E.D.N.Y. Mar. 2, 2007) (collectively, the "Lax-Olsten" factors).

### 3. The Funds Otherwise Satisfy the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *Greebel v. FTP Software*, 939 F. Supp. 57, 60 (D. Mass. 1996). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) and *Fischler v. Amsouth Bancorporation*, 176 F.R.D. 583 (M.D. Fla. 1997)); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 296.

The typicality requirement of Rule 23(a)(3) is satisfied where the named representative's claims have the "same essential characteristics as the claims of the class at large." *Danis v. USN Communs., Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999).  In other words, "the named plaintiffs' claims [must be] typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (noting that "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory")).

The claims of the Funds are typical of those of the Class.  The Funds allege, as do all class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning InMode, or omitted to state material facts necessary to make the statements they did make not misleading.  The Funds, as did all members of the Class, purchased InMode common stock during the Class Period at prices artificially inflated by Defendants' misrepresentations or omissions and were damaged upon the disclosure of those misrepresentations and/or omissions.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." The class representative must also have "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986); *Beck*, 457 F.3d at 296 (emphasizing that the adequacy inquiry "'serves to uncover conflicts of interest between named parties and the class they seek to represent'" (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997))).

The Funds are adequate representatives for the class. Here, the Funds have each submitted signed Certifications declaring their commitment to protect the interests of the class. *See* Pafiti Decl., Ex. C. There is no evidence of antagonism or conflict between the Funds' interests and those of the Class, and the Funds' significant financial interest demonstrates that they have a sufficient interest in the outcome of this litigation that gives them an incentive to vigorously prosecute fraud claims on behalf of the class.

As noted above, the Funds are sophisticated institutional investors. As such, their appointment would be consistent with the PSLRA's preference for the appointment of institutional investors as class representatives in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34 ("increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"). Indeed, courts in this Circuit strongly prefer appointment of institutional investors to lead complex securities class actions. *See, e.g.*,

*Novatel Wireless*, 2008 U.S. Dist. LEXIS 100622, at *12 (noting that movant was "the sort of lead plaintiff envisioned by Congress in the enactment of the PSLRA--a sophisticated institutional investor with a real financial interest in the litigation"); *Yuhe Int'l*, 2012 U.S. Dist. LEXIS 28040, at *8 (appointing institutional investor as lead plaintiff, finding it to be "'exactly the type of sophisticated market participant[] Congress intended to take on the role of lead plaintiff following the PSLRA's reforms'") (quoting *Regions Morgan Keegan*, 2010 U.S. Dist. LEXIS 132902, at *8); *AudioEye*, 2015 U.S. Dist. LEXIS 193348, at *13 (appointing as lead plaintiff "an institutional investor, which is precisely the kind of investor that Congress sought to encourage to assume a more prominent role in securities litigation with the enactment of the PSLRA's lead plaintiff provisions").

Consisting of likeminded institutional investors, the Funds constitute an appropriate group of the type expressly permitted by the PSLRA and routinely appointed to serve as lead plaintiff in PSLRA actions. In *China Agritech, Inc. v. Resh*, _ U.S. _, 138 S. Ct. 1800, 1807 n.3 (2018), the Supreme Court affirmed the propriety of appointing such groups as lead plaintiff, finding that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups." More recently, in *Mersho v. United States Dist. Court*, 6 F.4th 891, 899 (9th Cir. 2021), the Ninth Circuit Court of Appeals likewise held that "the [PSLRA] expressly allows a 'group of persons' to move for appointment" as lead plaintiff. *See also Miami Police Relief & Pension Fund v. Fusion-*

*io, Inc.*, No. 13-CV-05368-LHK, 2014 U.S. Dist. LEXIS 80141, at *20 (N.D. Cal. June 10, 2014) ("Small, cohesive groups . . . are routinely appointed as lead plaintiff in securities actions when they have shown their ability to manage the litigation effective in the interests of the class without undue influence of counsel.").

Here, demonstrating their fitness to serve jointly as Lead Plaintiffs as well as their adequacy more generally, the Funds have submitted a Joint Declaration attesting to, *inter alia*, their backgrounds, their experience serving as Lead Plaintiff in prior PSLRA actions, their understanding of the responsibilities of a lead plaintiff pursuant to the PSLRA, their decision to seek appointment jointly as Lead Plaintiffs, and the steps that they are prepared to take to cooperatively prosecute this litigation on behalf of the class. *See generally* Pafiti Decl., Ex. D.  Courts routinely appoint investor groups as lead plaintiff under such circumstances.  *See, e.g.*, *Xu v. FibroGen, Inc.*, No. 21-cv-02623-EMC, 2021 U.S. Dist. LEXIS 164034, at *23-24 (N.D. Cal. Aug. 30, 2021) (appointing group of sophisticated institutional investors as lead plaintiff, considering *inter alia* group's submission of detailed Joint Declaration in assessing adequacy); *McCracken v. Edwards Lifesciences Corp.*, No. 8:13-CV-1463-JLS (RNBx) , 2014 U.S. Dist. LEXIS 2147, at *12-13 (C.D. Cal. Jan. 8, 2014) (same).

As part of the Funds' efforts to formalize the leadership of this action and to demonstrate their commitment to jointly prosecute the action, their representatives participated in a conference call to discuss, among other things: the strength of the

claims against Defendants; a strategy for prosecuting these actions; the benefits that the class would receive from the leadership of a coordinated group of institutional investors with prior experience serving as Lead Plaintiffs under the PSLRA; the shared desire of the Funds to achieve the best possible result for the class; the interests in prosecuting the case in a collaborative, likeminded manner; and the actions that the Funds will each take to continue to ensure that the class's claims will be zealously and efficiently litigated. *See generally* Pafiti Decl., Ex. D.

### 4. The Funds Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses

The presumption in favor of appointing the Funds as Lead Plaintiffs may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

> (aa)   will not fairly and adequately protect the interest of the class; or
>
> (bb)   is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(II).

The ability and desire of the Funds to fairly and adequately represent the Class has been discussed above.  The Funds are not aware of any unique defenses Defendants could raise that would render them inadequate to represent the Class.

**B.    LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED**

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, 2001 WL 861694, at *4 (C.D. Cal. Apr. 26, 2001).  The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

The Funds have selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith.  *See* Pafiti Decl., Ex. E.  In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel.  *See id.*  For more than 85 years, Pomerantz has represented defrauded investors.  *See id.*  As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States.  *See id.*  Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010, and the $90 million

settlement in *Klein v. Altria Group, Inc. et al*, No. 3:20-cv-00075 (E.D. Va.) in March 2022. *See id.* As a result of Pomerantz's extensive experience in litigation involving issues similar to those raised in the Action, the Funds' counsel have the skill and knowledge which will enable them to prosecute the Action effectively and expeditiously. Thus, the Court may be assured that by approving the selection of Lead Counsel by the Funds, the members of the class will receive the best legal representation available.

## IV.   CONCLUSION

For the foregoing reasons, the Funds respectfully request that the Court issue an Order: (1) appointing the Funds as Lead Plaintiffs for the Class; and (2) approving Pomerantz as Lead Counsel for the Class.

Dated:  April 15, 2024                          POMERANTZ LLP

                                                */s/ Jennifer Pafiti*
                                                Jennifer Pafiti (SBN 282790)
                                                1100 Glendon Avenue, 15th Floor
                                                Los Angeles, CA 90024
                                                Telephone: (310) 405-7190
                                                jpafiti@pomlaw.com

                                                POMERANTZ LLP
                                                Orly Guy
                                                Eitan Lavie
                                                HaShahar Tower
                                                Ariel Sharon 4, 34th Floor
                                                Givatayim, Israel 5320047
                                                Telephone: +972 (0) 3 624 0240
                                                Facsimile: +972 (0) 3 624 0111
                                                oguy@pomlaw.com
                                                eitan@pomlaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Counsel for the Meitav Funds and the Teachers Funds and Proposed Lead Counsel for the Class*

CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jennifer Pafiti*
Jennifer Pafiti