**WILLKIE FARR & GALLAGHER LLP**
Glenn K. Vanzura (SBN 238057)
  GVanzura@willkie.com
Arev H. Hovsepian (SBN 348222)
  AHovsepian@willkie.com
Zoe R. Goldberg (SBN 353799)
  ZGoldberg@willkie.com
Johnathan J. Vaknin (SBN 356879)
  JVaknin@willkie.com
2029 Century Park East, Suite 2900
Los Angeles, CA 90067-2905
Telephone:    (310) 855-3000

Joshua S. Levy (*Admitted Pro Hac Vice*)
  JLevy@willkie.com
1875 K Street, N.W.
Washington, D.C. 20006
Telephone:    (202) 303-1147

*Attorneys for Defendants*
*InMode Ltd., Moshe Mizrahy,*
*Yair Malca, Shakil Lakhani,*
*Spero Theodorou, and Michael Kreindel*

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| IN RE INMODE LTD. SECURITIES LITIGATION | Case No. 2:24-cv-1219-MEMF-MBK |
| | <u>CLASS ACTION</u> |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Hon. Maame Ewusi-Mensah Frimpong Courtroom 8B – First Street |
| | **DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS** |
| | *Declaration of Glenn K. Vanzura Filed Concurrently Herewith* |
| | Date:      August 14, 2025<br>Time:      10:00 A.M.<br>Crtrm.:    8B |
| | Action Filed: February 14, 2024<br>Trial Date:    None Set |

# TABLE OF CONTENTS

*Page*

Preliminary Statement ............................................................................................................... 1

Argument ................................................................................................................................... 2

I.      The Opposition Confirms That The Complaint Fails To Plead Loss Causation ................................................................................................................. 2

II.     The Opposition Confirms That The Complaint Fails To Plead Scienter .................. 5

III.    The Opposition Confirms That The Complaint Fails To Plead Any Actionable Misstatements ................................................................................... 10

        A.      The Complaint Is An Impermissible Puzzle Pleading ................................. 10

        B.      At Least Five Challenged Statements Are Not Actionable .......................... 10

        C.      The Challenged Statements Regarding Alleged Discounting Were Not Materially Misleading ........................................................................... 11

        D.      The Challenged Statements Regarding Alleged Off-Label Marketing Were Not Materially Misleading ............................................... 12

IV.     The Claims Against The Individual Defendants Should Be Dismissed ................. 15

Conclusion .............................................................................................................................. 15

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

i

REPLY ISO DEFENDANTS' MOTION TO DISMISS

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Amgen Inc. Sec. Litig.*,
  2014 WL 12585809 (C.D. Cal. Aug. 4, 2014)................................................................5

*In re Amgen Inc. Sec. Litig.*,
  544 F. Supp. 2d 1009 (C.D. Cal. 2008) ....................................................................13

*Barnes v. Edison Int'l*,
  2022 WL 822191 (9th Cir. Mar. 18, 2022)...............................................................14

*In re BofI Holding, Inc. Sec. Litig.*,
  977 F.3d 781 (9th Cir. 2020) ...............................................................................2, 3

*Boston Ret. Sys. v. Uber Techs.*,
  2020 WL 4569846 (N.D. Cal. Aug. 7, 2020) ............................................................10

*Chu v. Sabratek Corp.*,
  100 F. Supp. 2d 827 (N.D. Ill. 2000) .......................................................................6

*City of Roseville Emps. Ret. Sys. v. Sterling Fin. Corp.*,
  47 F. Supp. 3d 1205 (E.D. Wash. 2014).................................................................14

*In re Countrywide Fin. Corp. Deriv. Litig.*,
  554 F. Supp. 2d 1044 (C.D. Cal. 2008) .....................................................................5

*Dura Pharms. Inc. v. Broudo*,
  544 U.S. 336 (2005)...........................................................................................2, 5

*E. Ohman J:Or Fonder AB v. NVIDIA Corp.*,
  81 F.4th 918 (9th Cir. 2023) ...............................................................................7, 8

*In re Extreme Networks, Inc. Sec. Litig.*,
  2018 WL 1411129 (N.D. Cal. Mar. 21, 2018)............................................................8

*In re Facebook Sec. Litig.*,
  87 F.4th 934 (9th Cir. 2023) ................................................................................11

*Ferreira v. Funko Inc.*,
  2021 WL 880400 (C.D. Cal. Feb. 25, 2021)..............................................................11

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
  763 F. Supp. 3d 1027 (C.D. Cal. 2025) .................................................................1, 3

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
  97 F.4th 1171 (9th Cir. 2024) ................................................................................3

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

REPLY ISO DEFENDANTS' MOTION TO DISMISS

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
  63 F.4th 747 (9th Cir. 2023) .................................................................................11

*Gonzalez v. Planned Parenthood of L.A.*,
  759 F.3d 1112 (9th Cir. 2015) ..............................................................................14

*Hatamian v. Advanced Micro Devices*,
  87 F. Supp. 3d 1149 (N.D. Cal. 2015) ....................................................................8

*Inst. Invs. Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009).................................................................................12

*In re Intuitive Surgical Sec. Litig.*,
  65 F. Supp. 3d 821 (N.D. Cal. 2014) ...............................................................10, 14

*Karinski v. Stamps.com, Inc.*,
  2020 WL 281716 (C.D. Cal. Jan. 17, 2020) ............................................................8

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ................................................................................14

*Lloyd v. CVB Fin. Corp.*,
  811 F.3d 1200 (9th Cir. 2016) ................................................................................8

*Nursing Home Pension Funds, Local 144 v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004) ................................................................................7

*Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*,
  780 F. App'x 480 (9th Cir. 2019) ...........................................................................8

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
  774 F.3d 598 (9th Cir. 2014) ..............................................................................2, 5

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010) ..................................................................................5

*Petrie v. Elec. Game Card, Inc.*,
  2015 WL 475958 (C.D. Cal. Feb. 5, 2015)..............................................................15

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051, 1059–60 (9th Cir. 2014) ................................................................11

*Provenz v. Miller*,
  102 F.3d 1478 (9th Cir. 1996) ................................................................................5

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) ..........................................................................5, 7, 8

*In re Questcor Sec. Litig.*,
  2013 WL 5486762 (C.D. Cal. Oct. 1, 2013)...........................................................14

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

iii

*Reese v. Malone*,
  747 F.3d 557 (9th Cir. 2014) ...................................................................................................7

*Roberts v. Zuora, Inc.*,
  2020 WL 2042244 (N.D. Cal. Apr. 28, 2020) .........................................................................8

*Rozier v. Dep't of Homeland Sec. Fed. Protective Serv.*,
  2022 WL 2199938 (C.D. Cal. Mar. 7, 2022) ........................................................................15

*Estate of Saunders v. C.I.R.*,
  745 F.3d 953 (9th Cir. 2014) ...................................................................................................1

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
  485 F. Supp. 3d 1113 (N.D. Cal. 2020) .................................................................................12

*Shupe v. Rocket Cos.*,
  660 F. Supp. 3d 647 (E.D. Mich. 2023)...................................................................................7

*In re Sorrento Therapeutics, Inc. Sec. Litig.*,
  97 F.4th 634 (9th Cir. 2024) ..............................................................................................6, 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).............................................................................................................5, 9

*Weston v. DocuSign, Inc.*,
  669 F. Supp. 3d 849 (N.D. Cal. 2023) .....................................................................................7

*Zaghian v. Farrell*,
  675 F. App'x 718 (9th Cir. 2017) ..........................................................................................11

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) .........................................................................................6, 8, 10

*In re Zynga Inc. Sec. Litig.*,
  2015 WL 1382217 (N.D. Cal. Mar. 25, 2015)..........................................................................5

**Statutes**

15 U.S.C. § 78j(b) ..........................................................................................................................15

15 U.S.C. § 78u-4...................................................................................................................10,11

**Rules**

Fed. R. Civ. P. 8(a)(2) .....................................................................................................................5

Fed. R. Civ. P. 9(b) ..........................................................................................................................5

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

iv

Pursuant to the Court's March 24, 2025 Order (ECF No. 75), Defendants respectfully submit this Reply in further support of their Motion To Dismiss ("Motion" or "Mot."; ECF No. 77.)[1]

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition To Defendants' Motion To Dismiss ("Opposition" or "Opp."; ECF No. 82) ignores or otherwise fails to substantively respond to most of the Motion's reasons that the Complaint should be dismissed. The Opposition spends pages upon pages merely repeating the Complaint's bald allegations and speculation, while burying most of Plaintiffs' legal arguments among a whopping ***39 footnotes***. It is well-settled that "arguments raised only in footnotes are generally deemed waived and need not be considered." *In re Genius Brands Int'l, Inc. Sec. Litig.*, 763 F. Supp. 3d 1027, 1048 (C.D. Cal. 2025); *see also Estate of Saunders v. C.I.R.*, 745 F.3d 953, 962 n.8 (9th Cir. 2014) ("Arguments raised only in footnotes . . . are generally deemed waived.").

Even if the Court elects to credit the Opposition's dozens of footnotes, the Opposition:

- Fails to describe any causal connection between the alleged disclosures and the challenged statements;

- Admits that the Complaint fails to allege any stock trading timing or history;

- Admits that the Complaint relies on low-level CWs who lack first-hand knowledge;

- Grossly mischaracterizes Defendants' statements regarding so-called "discounting";

- Fails to address the critical, indisputable distinction between InMode's U.S. marketing, which is subject to FDA regulation, and InMode's non-U.S. marketing, which is not;

- Fails to respond to the Motion's identification of certain challenged statements, which are inactionable puffery and opinion, and/or protected forward-looking statements;

- Abandons any direct liability claims against the Individual Defendants;

- Fails to identify a single well-pleaded allegation that Lakhani, Theodorou, or Kreindel controlled InMode or any of the challenged statements; and

- Does not oppose Defendants' request (ECF No. 78) that the Court consider and/or judicially notice the Exhibits submitted with the Motion.

For these reasons, and the reasons explained in the Motion and further herein, the Complaint should be dismissed in its entirety and with prejudice.

---

[1] Unless otherwise indicated, all capitalized terms have the same meanings as in Defendants' Motion; all internal alterations, quotations, and citations are omitted; and all emphasis is added.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

1

**ARGUMENT**

**I.    The Opposition Confirms That The Complaint Fails To Plead Loss Causation.**

The Opposition's own authority explains that "the loss causation requirement acts as a critical bulwark against frivolous securities fraud lawsuits," which "guards against lawsuits being used as an *in terrorem* device to bludgeon companies into settling claims." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 800 (9th Cir. 2020) (Lee, J., concurring in part and dissenting in part). Accordingly, Defendants' Motion addressed this element first (Mot. at 9–14) while Plaintiffs' Opposition addressed it last (Opp. at 28–34). Plaintiffs' tactical choice suggests their recognition that the Complaint's loss causation allegations are exceptionally weak and fail to plead with particularity "a 'causal connection between the material misrepresentation and the loss'" (Opp. at 28 (quoting *Dura Pharms. Inc. v. Broudo*, 544 U.S. 336, 342 (2005))).

**February 17, 2023 and March 10, 2023 *TCF* Articles:** The Opposition does not specify "which misstatements were corrected by the purported corrective disclosures" in these two articles, highlighting the Complaint's failure to plead loss causation under binding Ninth Circuit precedent. (Opp. at 30 n.30 (citing *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598 , 602, 608 (9th Cir. 2014)).) The Opposition also concedes that these articles did ***not*** discuss or reveal off-label marketing (Opp. at 29–30), and therefore could not have corrected any challenged statements about this issue (Mot. at 11–12). These articles discussed only alleged complaints and safety reporting about InMode's products. The Opposition then ***speculates*** that these "injuries stemmed from the unapproved uses of those devices." (Opp. at 29–31.) Critically, though, the Opposition does not cite a single factual allegation in the Complaint, or a single disclosure in the *TCF* articles, revealing that the supposed injuries "stemmed from the unapproved uses" of InMode devices, much less off-label marketing. The Opposition simply fabricated such a connection. Fabrication and speculation will not suffice: while a corrective "disclosure 'need not precisely mirror the earlier misrepresentation'" (*id.* at 29 (quoting *BofI*, 977 F.3d at 790)), it must "reveal to the market [] ***facts***" and not just "speculation." *BofI*, 977 F.3d at 793. Because Plaintiffs cannot point to any factual allegations tying off-label marketing to the purported injuries and complaints the *TCF* articles discussed, the Complaint does not adequately plead that these two disclosures "corrected" InMode's statements

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

2

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

regarding its compliance with FDA marketing regulations. *Id.*at 797 (blog posts were not corrective disclosures because "it is not plausible that the market reasonably perceived these posts as revealing the falsity of BofI's prior misstatements").

The Opposition further concedes that the March 10, 2023 *TCF* article is based on already-public information via an FDA database on its official government website, which is hardly "some webpage tucked in a deep corner of the internet." (Opp. at 31 (quoting *In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1186–87 (9th Cir. 2024)); *see* Mot. at 12.) In *Genius Brands* (on which Plaintiffs rely), the nominally public information was hidden across "hundreds of listings" in "a web archive" that could only be reviewed manually. 97 F.4th at 1187. Here, by contrast, the information about InMode's devices is "readily available to the public," *id.* at 1186 (citing *BofI*, 977 F.3d at 795), by simply searching for "InMode" in the "Manufacturers" field on the FDA website.[2]

**October 12, 2023 *TCF* Article:** This article also did not correct any challenged statement. The article's "compensation sheet from 2019"—before the Class Period—simply shows that "the amount of commission the sales team could expect to receive" increased as they sold certain products for higher prices. (Opp. at 32 & n.33; Ex. 34.) To the extent platform sales prices were below the purported "list price" (*id.*), the commission structure for platforms was in no way inconsistent with Malca's 2021 statement about the attendant consumables (*e.g.*, attachments to the platforms): "[W]e don't discount our platforms ***just to jack up the price of the consumables***" (¶ 147). This is the only statement the Opposition identifies as corrected by the article, and Plaintiffs take it out of context by tellingly editing out the emphasized portion. (Opp. at 32.) The 2019 commission structure says nothing about the pricing model to which Malca's remarks referred, and the Opposition concedes that "the Complaint does not . . . plead any facts that compare the prices

---

[2] *See* https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfmaude/search.cfm. Unlike the FDA's public website, *TCF* is an anonymous website hidden behind a $24,000/year paywall (Mot. at 10–11), which is "only available to a narrow segment of the public" and is "so hidden that the market cannot access or understand it and react accordingly," *Genius Brands*, 97 F.4th at 1186. The Opposition relies on out-of-District cases regarding *TCF*, where the parties did not challenge whether *TCF* articles can be corrective disclosures. (*See* Opp. at 24 n.22, 30 & n.31.) The Opposition (Opp. at 31–32) also claims that the March 10, 2023 *TCF* article revealed new information in the form of a purported "expert analysis" by an individual that did not actually conduct any "expert analysis"; he simply described the general "reporting obligations of the manufacturer" under "the definitions in the regulations" (Ex. 33), which was already publicly available information.

3

of the devices with attachments or services" (*id.* at 32 n.33)—the topic of Malca's discussion.[3]

**October 12, 2023 and December 6, 2023 Revenue Guidance:** The Opposition invokes a "materialization of the risk[] approach" to loss causation used by certain "***district courts***" (Opp. at 33), which "the ***Ninth Circuit 'has never*** expressly adopted'" (Mot. at 13 (quoting *In re Nektar Therapeutics*, 34 F.4th 828, 838 n.6 (9th Cir. 2022))). Plaintiffs' materialization-of-the-risk theory is pure speculation. As to alleged discounting, the Opposition's theory appears to be: (1) "[t]he discounts InMode offered to customers were often tied to the amount of financing the customer could obtain"; (2) "higher interest rates [] were contributing to financing constraints"; (3) such "financing constraints" ***might have*** resulted in greater discounting; and (4) such discounting thus ***might have*** led to "lowered revenue guidance." (Opp. at 33.) The Opposition also makes the contradictory argument that "financing constraints" from "higher interest rates" somehow "related to the Company's inability to continue discounting due to [unspecified] negative scrutiny of such practices." (*Id.*) But the Opposition does not point to a single factual allegation in the Complaint to support Plaintiffs' speculation that "financing constraints" resulted in more or less discounting, which "contributed to InMode's revenue decline" or lower "revenue guidance." (*Id.* at 34 & n.37.) To the contrary, the Opposition does not dispute that any discounting was "reflected in InMode's existing financials" or explain how discounting designed to drive sales instead caused revenue to decline. (*Id.*) Moreover, InMode repeatedly disclosed and warned investors that its customers used "financing for the purchase of the Company's products" (Ex. 41 (2020 Form 20-F) at F-17)—regardless of whether they were discounted—which "depends in part upon the availability of obtaining financing at acceptable interest rates" (*id.* at 14), so as "[i]nterest rates keep going up, financing policies start taking longer" (Ex. 29 at 15).[4] The Complaint thus fails to adequately allege loss causation with particularity by alleging any facts to support Plaintiffs' speculative leaps, or by detailing risks that were not already publicly known.

---

[3] The Opposition parrots this article's unsupported speculation that discounting "***may have*** affected InMode's revenue," but never cites any facts to explains how discounting that had been allegedly going on since at least ***2019*** caused InMode to "lower[] its guidance for ***2023***." (Opp. at 32 (citing ¶ 181).)

[4] (*See also* Ex. 40 (2019 Form 20-F) at 11; Ex. 41 (2020 Form 20-F) at 13, F-17; Ex. 42 (2021 Form 20-F) at 13, F-17; Ex. 43 (2022 Form 20-F) at 10, F-16; Ex. 44 (2023 Form 20-F) at 11, F-15.) These exhibits contain additional pages of previously submitted, excerpted exhibits. (ECF No. 77.)

4

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

As to alleged "off-label" marketing, the Opposition invents a convoluted theory that (1) off-label marketing of the Company's devices **might have** led to higher revenue from more sales for off-label use; (2) such increased off-label use **might have** resulted in injuries to users; (3) such injuries **might** "lead customers to question the safety of the Company's products"; (4) such questioning **might** cause "a slowdown in platform sales"; and (5) such a slowdown **might** "materialize[] in lowered revenue guidance." (Opp. at 33.) This fact-free speculation appears nowhere in the Complaint and should be rejected out of hand. In the Opposition's authority, the court held that a complaint adequately pleaded loss causation because its factual allegations illuminated a connection between "the FDA's restrictions on off-label use" and the company's "off-label marketing campaign." *In re Amgen Inc. Sec. Litig.*, 2014 WL 12585809, at *21 (C.D. Cal. Aug. 4, 2014). Here, by contrast, there is no "causal connection" factually alleged between InMode's alleged marketing and lowered revenue guidance. In the Ninth Circuit, "'[t]o 'touch upon' a loss is not to **cause** a loss," and loss causation requires more than a change in guidance. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010) (quoting *Dura*, 544 U.S. at 343).[5]

## II.   The Opposition Confirms That The Complaint Fails To Plead Scienter.

The Opposition fails to identify any "motive" or "conscious misbehavior or recklessness" (Opp. at 15–28) to "state with particularity facts giving rise" to a "strong" inference of scienter by any Defendant. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313–14 (2007).

***First***, the Opposition concedes that only "'[u]nusual' or 'suspicious' stock sales by corporate insiders may constitute circumstantial evidence of scienter," but cannot identify any such sales alleged in the Complaint. (Opp. at 26 (quoting *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1146 (9th Cir. 2017)).) The Complaint alleges, at most, "the percentage of shares sold and dollar amounts [sold]" with no discussion of timing or comparative stock sales history (Opp. at 26), which is insufficient under the Opposition's own authority. *See Provenz v. Miller*, 102 F.3d 1478, 1491 (9th Cir. 1996) (insiders "traded their stock in large amounts **at sensitive times**"); *In re Countrywide*

---

[5] Plaintiffs' reliance on *In re Zynga Inc. Sec. Litig.*, 2015 WL 1382217, at *7–8 (N.D. Cal. Mar. 25, 2015) (Opp. at 34 & n.36) is misplaced. That case is non-binding authority and, in any event, applied Rule 8(a)(2)'s "short plain statement" pleading standard for loss causation, which is not good law in the Ninth Circuit. *See Or. Pub.*, 774 F.3d at 604–05 ("heightened pleading standards apply to loss causation" under Rule 9(b)).

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

*Fin. Corp. Deriv. Litig.*, 554 F. Supp. 2d 1044, 1069 (C.D. Cal. 2008) (scienter alleged based on the "***timing*** of [CEO's] trading"). The Complaint instead refers only to a meaningless "average share price" for each year during the Class Period. (Opp. at 27 n.26; Compl. ¶ 10 n.2.) The Opposition does not cite a single Ninth Circuit case in which a court has accepted such an approach. This is because the Ninth Circuit requires that the Complaint "must provide a 'meaningful trading history' for purposes of comparison to the stock sales within the class period." *In re Sorrento Therapeutics, Inc. Sec. Litig.*, 97 F.4th 634, 643 (9th Cir. 2024) (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1005 (9th Cir. 2009)). Rather than pleading any such history, the Opposition cites out-of-circuit cases purporting to excuse this failure. (Opp. at 27.) Even there, the Opposition's cases support dismissal because the Complaint does "not attempt to link" any "insider sales to any specific misleading statement," which "definitively establishes that the plaintiffs have not adequately alleged scienter." *Chu v. Sabratek Corp.*, 100 F. Supp. 2d 827, 842 (N.D. Ill. 2000) (cited in Opp. at 27). In addition, the Opposition concedes that the Complaint lacks any allegations about Theodorou's stock sales (Opp. at 27–28 n.26), which is inconsistent with Plaintiffs' insider-trading scienter theory (Mot. at 16). Finally, the Opposition does not dispute that InMode's "long-standing stock repurchase" program rebuts any inference of scienter. (Opp. at 28 (quoting *In re Cisco Sys. Inc. Sec. Litig.*, 2013 WL 1402788, at *8 (N.D. Cal. Mar. 29, 2013)); *see also* Mot. at 16.)

***Second***, the Opposition mischaracterizes the challenged statements by arguing that the Complaint pleaded scienter based on "the Individual Defendants' knowledge of [] discounts given on InMode's systems." (Opp. at 16.) Defendants never represented that InMode does not discount. The Opposition admits that Mizrahy and Malca discussed only that InMode does not use "a razor-razorblade model." (*Id.* at 5–6, 21.) Plaintiffs define this as a sales model in which "a dependent good is sold at a loss (or at cost) and a paired consumable good generates the profits." (*Id.* at 5 n.5.) Critically, there is no allegation that InMode ever sold its platforms "at a loss (or at cost)." The Individual Defendants' alleged knowledge of purported "discounting" is thus irrelevant to the scienter analysis. The test is whether they knowingly and falsely represented that InMode uses a razor-razorblade model. The Complaint fails this test because it makes no allegations whatsoever regarding any such knowledge (nor could it). In short, allegations about supposed "discounting" fail

6

to plead "knowledge of contradictory contemporaneous information" about the "razor-razorblade model," and therefore fail to plead scienter. (*Id.* at 15–16 (quoting *Nursing Home Pension Funds, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004)).)

Even if knowledge of "discounting" were somehow relevant to statements about the "razor-razorblade model," the Complaint does not even allege facts showing that any Individual Defendant was actually aware of such discounting. The Complaint alleges only that "Mizrahy, Malca, and Lakhani **had access to**" data regarding the prices of "sales of InMode's systems through the use of Salesforce." (*Id.* at 16–17.)[6] In the Ninth Circuit, speculation that Defendants "'**must have known** about discounts'" because they "had access to data that supposedly informed them of the undisclosed information" does not plead scienter. (*Id.* at 17 n.15, 18 n.16; *see* Mot. at 19–20.) In *E. Ohman J:Or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918, 940–41 (9th Cir. 2023), for example, the Ninth Circuit recently held that allegations that the CFO "had access to contradictory information," was "authorized to access NVIDIA's centralized database," and "could direct VPs to forward the data to her," did "**not** establish[] a strong inference of scienter." The Opposition's remaining authority likewise holds that scienter requires factual allegations that the Individual Defendants not only had "access" to relevant data, but **also** actually reviewed that data during the Class Period, which is exactly what the Complaint fails to allege. *Id.* at 938–40 (scienter alleged for CEO who "personally reviewed NVDIA's sales data through the centralized database").[7]

The Opposition also confirms that all of these allegations come from CWs who were "low-level employees" with no knowledge of company-wide pricing strategies, "did not personally attend meetings with the Individual Defendants," and either worked at InMode for only a few months or left InMode "before the Class Period beg[an]." (Opp. at 19–21.) Under Ninth Circuit precedent—which the Opposition ignores—"the confidential witnesses were simply not positioned to know the

---

[6] The Complaint does not even attempt such allegations about Theodorou or Kreindel.

[7] *See also Nursing*, 380 F.3d at 1231 ("all sales information was in [one] database" and "top executives admit to having monitored the database" with "hard numbers" about sales); *Quality*, 865 F.3d at 1145 (employees "compiled sales reports using Salesforce," which were "delivered to the CFO" and "the management team"); *Reese v. Malone*, 747 F.3d 557, 572 (9th Cir. 2014) (senior vice president "referenc[ed] the data directly").*Weston v. DocuSign, Inc.*, 669 F. Supp. 3d 849, 884 (N.D. Cal. 2023) (defendants "made statements on different earnings calls that indicate that they closely tracked customer demand data"); *Shupe v. Rocket Cos.*, 660 F. Supp. 3d 647, 679–80 (E.D. Mich. 2023) (defendant "acknowledged that Defendants reviewed and used those data points").

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

REPLY ISO DEFENDANTS' MOTION TO DISMISS

information alleged, many report only unreliable hearsay, and others allege conclusory assertions of scienter," which "are not sufficient to raise a strong inference of scienter." *Zucco*, 552 F.3d at 996–97; (*see* Mot. at 18–19 (collecting cases)). The Opposition relies heavily on the allegations of CW11 (Opp. at 17–19 & n.15), but CW11 was "not employed by [InMode] during the time period in question" and therefore "had no firsthand knowledge" during the Class Period. *Zucco*, 552 F.3d at 996. In the Opposition's authority, by contrast, scienter was alleged based on CWs who had more senior positions and personal knowledge of the practices at issue.[8]

*Third*, the Opposition has no response to Defendants' scienter notes regarding alleged off-label marketing—particularly that it is critical to differentiate between InMode's marketing in the U.S. for FDA-approved uses and outside the U.S. for additional uses—which the Complaint very noticeably fails to do. (Mot. at 21–24.) Had Plaintiffs and their CWs been able to allege facts specific to marketing *in the U.S.*, they would have expressly done so. The Opposition instead merely rehashes the Complaint's grossly misleading allegations, designed to lead the Court to believe that all marketing was by InMode's U.S. operations, even where it clearly was not, and even though the Complaint does not actually allege as much. (Opp. at 22–26; Mot. at 8–9.). The Opposition claims that the accounts of CWs 1–2, 4, and 6–7 are "specific and credible" and "cannot be legitimately disputed," but cites only to the CWs' low-level positions and brief dates of employment. (Opp. at 24–25.) The Opposition even invents new CW allegations about "InMode's utter disregard for compliance with FDA regulations" (*id.* at 25) but, tellingly, cannot point to a single allegation in the Complaint that actually says that.

---

[8] *See, e.g.*, *Quality*, 865 F.3d at 1139, 1145 (CWs included C-suite executives who attended a conference call with the CEO, and a "Sales Analyst" who "personally compiled sales reports" and "delivered [them] to the CFO"); *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1208 (9th Cir. 2016) (CW "statements reported by the COO were specific in time, context, and details, and involved important communications from a chief executive officer to his Board"); *NVIDIA*, 81 F.4th at 940 (CW "personally met with [CEO] Huang on a regular basis"); *see also*. *Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 484 n.5 (9th Cir. 2019) ("CW5 was in a position to be personally knowledgeable"); *Karinski v. Stamps.com, Inc.*, 2020 WL 281716, at *16 (C.D. Cal. Jan. 17, 2020) ("statements by the former employees alone likely would not establish a strong inference of scienter"); *Roberts v. Zuora, Inc.*, 2020 WL 2042244, at *10–11 (N.D. Cal. Apr. 28, 2020) (CWs included senior employees who had "personal knowledge . . . as a direct result of their positions"); *In re Extreme Networks, Inc. Sec. Litig.*, 2018 WL 1411129, at *25–27 (N.D. Cal. Mar. 21, 2018) (CWs were senior employees who had "personal conversations with [CEO] Berger"); *Hatamian v. Advanced Micro Devices*, 87 F. Supp. 3d 1149, 1163 (N.D. Cal. 2015) (CWs included "director of finance" and direct report to CFO).

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

8

REPLY ISO DEFENDANTS' MOTION TO DISMISS

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

The Opposition also repeats allegations by CW8 and CW10, but admits that they both worked exclusively "*in Israel*"—which is not subject to FDA regulations—had no responsibility for the U.S. market, and therefore had no knowledge of U.S. marketing, let alone whether it complied with FDA regulations. (*Id.* at 22–23 & n.20.) The Opposition tries to give the false appearance of a U.S. connection by stringing together unrelated events: "the FDA audited InMode in 2021"—which necessarily happened in the U.S. and not Israel where CW8 and CW10 were located—and, separately, "InMode made all the brochures disappear" from an unspecified location and CW10 "personally had to delete information from the Company's website" at some unspecified time. (*Id.* at 22 (citing ¶ 104).) The Opposition cannot point to a single well-pleaded allegation that any of CW8 or CW10's allegations, or any of the marketing material at issue, related to the U.S. market. (*Id.* at 22–23.) To the contrary, the Opposition does not dispute (but fails to forthrightly acknowledge to the Court) that the Complaint alleges only that the "brochures" at issue were "distributed in the market" without specifying any country, the YouTube videos at issue were posted on the "InMode *International*" YouTube page with a disclaimer, and InMode maintained separate U.S. and international websites. (*Id.* at 25 n.23; Mot. at 23–24.)

The Opposition also speculates that an August 2020 "conference call with U.S. analysts" in which Theodorou allegedly discussed "unapproved indications" must be "related to U.S. sales." (Opp. at 22 n.19; *see id.* at 13–14.) But speculation is not a well-pleaded factual allegation. In fact, U.S. analysts are interested in *all* of "the Company's earnings and operations" (¶ 140), including its 27% of sales outside the U.S. (Ex. 37 at 8). It is *Plaintiffs'* burden to adequately plead scienter, so any "ambiguities count against inferring scienter." *Tellabs*, 551 U.S. at 310.

Finally, the Opposition repeats double-hearsay from an anonymous *TCF* article relying on a purported secret recording from an anonymous source in which Theodorou allegedly explained the difference between "off-label use" by individual doctors, which *is* permitted under FDA regulations, and off-label marketing, which he stated InMode was not doing because "InMode lacked FDA approval to market the Morpheus8V for stress urinary incontinence." (Opp. at 23–24; ¶¶ 94, 96; Mot. at 23.) This directly undermines any inference of scienter. Moreover, the Opposition does not dispute that "*TCF* articles lack[] reliability to support scienter" where, as here, "they [are]

9

based on anonymous uncorroborated sources." (Opp. at 30 n.31 (citing *In re Neustar Sec. Litig.*, 83 F. Supp. 3d 671, 686 (E.D. Va. 2015)).) The Opposition asserts that Plaintiffs conducted "an independent investigation" (*id.* at 24 n.22, 30 n.31), but cannot point to a single well-pleaded allegation verifying or corroborating this anonymous, secret recording.[9]

### III.    The Opposition Confirms That The Complaint Fails To Plead Any Actionable Misstatements.

#### A.    The Complaint Is An Impermissible Puzzle Pleading.

The Opposition's own authority holds that a "'puzzle pleading' is a complaint that forces the defendants and/or court to sort out the alleged statements and match them with the corresponding adverse facts in order to solve the puzzle of interpreting Plaintiff's claims," which "violates the most basic of pleading standards." *In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d 821, 831 (N.D. Cal. 2014). The Opposition nonetheless asserts that "[t]he Complaint is not a puzzle-pleading" (Opp. at 5 n.4), but it does not dispute that the Complaint is filled with "lengthy statements attributed to the defendants, followed by a generalized list of reasons that the statements may have been false or misleading or a generalized list of omissions that were required to make the statements not misleading." *Boston Ret. Sys. v. Uber Techs.*, 2020 WL 4569846, at *4 (N.D. Cal. Aug. 7, 2020). The Opposition's own authority holds that this exactly "a true puzzle-style pleading format." *Id*.

#### B.    At Least Five Challenged Statements Are Not Actionable.

Regardless of the Complaint's format, the Opposition confirms that every single challenged statement in InMode's Form 6-K disclosures and every statement attributed to Lakhani, Theodorou, or Kreindel is not actionable as puffery or opinion, and/or is protected by the PSLRA safe harbor for forward-looking statements. (Mot. at 26–27 (citing ¶¶ 135, 145, 153, 157, 164); Opp. at 15 n.13.) The Opposition mixes up Defendants' arguments and does not actually respond to them. For example, Lakhani's statement in InMode's May 6, 2020 Form 6-K that "*[w]e believe* that our *breakthrough devices*, Evolve and Evoke, are *well-positioned to attract* both physicians and

---

[9] Under Ninth Circuit precedent, the fact that "Mizrahy and Malca executed Sarbanes Oxley certifications" (Opp. at 25–26) "adds nothing substantial to the scienter calculus," and does "not make [] insufficient allegations more compelling by their presence in the same complaint." *Zucco*, 552 F.3d at 1003–04 (collecting cases).

10

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

patients post-crisis" is classic puffery and opinion. (Mot. at 26–27 (quoting ¶ 135).) The Opposition argues that this statement is "not forward-looking, as evidenced by the use of present tense" (Opp. at 15 n.13), which is irrelevant to whether it is puffery or opinion. *See Sorrento*, 97 F.4th at 641 (holding that company calling potential vaccine a "breakthrough" is inactionable).[10]

The Opposition does not dispute that the remainder of this same statement—"we believe that these technologies ***will be significant growth drivers in the future*** and ***will become*** the standard of care for facial and body reshaping ***in the future***"—is a forward looking opinion. (Mot. at 26–27 (quoting ¶ 135); Opp. at 15 n.13.) Instead, the Opposition asserts that such forward-looking statements were not "accompanied by meaningful cautionary language." (Opp. at 15 n.13.) The Opposition ignores that the Ninth Circuit has held that cautionary language identical to that in InMode's Form 6-K—which highlights the forward-looking statements and cautions investors "not to place undue reliance" on them—was sufficient to "exempt [challenged statements from liability] under the PSLRA's safe harbor provision." (Mot. at 27 (quoting *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1059–60 (9th Cir. 2014)).) In the Opposition's authority, companies disclosed only "boilerplate listing of generic risks," such as "the risk that the conditions of the closing transaction are not satisfied or that the transaction is not consummated," *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 780 (9th Cir. 2023), "the possibilities of cyberattacks, hacking, and phishing," *In re Facebook Sec. Litig.*, 87 F.4th 934, 951 (9th Cir. 2023), and risk from the "potential failure to 'achieve [ ]sales expectations.'" *Zaghian v. Farrell*, 675 F. App'x 718, 720 (9th Cir. 2017). Here, by contrast, InMode expressly disclosed risks from "off-label" marketing of its devices. (Mot. at 7–8, 27.) Further, as the Opposition highlights, the cautionary language in its cited cases "discusse[d] as a mere possibility a risk ***that has already materialized***." (Opp. at 15 n.13.) There is no such allegation here.

C.    **The Challenged Statements Regarding Alleged Discounting Were Not Materially Misleading.**

As to the challenged statements regarding purported "discounting," the Opposition

---

[10] "[L]anguage in the present tense" using "we believe" is in "the scope of the PSLRA safe harbor." *Ferreira v. Funko Inc.*, 2021 WL 880400, at *15 (C.D. Cal. Feb. 25, 2021) (collecting cases).

11

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

selectively quotes sentence fragments out of context and does not respond to the Motion's relevant arguments. (Opp. at 1–2, 5–7.) When read in context, as the Ninth Circuit requires, it is clear that none of the challenged statements claimed that InMode "never discounted its devices." (Mot. at 28–29 (citing *Nektar*, 34 F.4th at 837).) To take the Opposition's own examples, Malca said that "we don't discount our platforms ***just to jack up the prices of the consumables***," and InMode does not use a "razor-razorblade model," in which—according to Plaintiffs—"a dependent good is sold at a loss (or at a cost) and a paired consumable good generates the profits." (Opp. at 5–6 & n.5.) The statements' context makes clear that they referred to InMode's comparative pricing between its devices and services, and were not making unqualified representations that InMode did not offer any discounts. (Mot. at 28.) *See SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1129 (N.D. Cal. 2020) (dismissing statements challenged for omitting "Discounting Promotion," because the complaint "fails to provide any factual allegations to show how the statement was false when made").[11] Finally, the Opposition appears to abandon the Complaint's challenge to the "a cheap price" statement, (¶ 143) because it related exclusively to InMode's sales in China (Mot. at 28–29).

## D. The Challenged Statements Regarding Alleged Off-Label Marketing Were Not Materially Misleading.

The Opposition similarly repeats the Complaint's allegations that InMode marketed its devices for uses not approved by the FDA but does not substantively respond to the critical distinction between InMode's marketing in and outside the U.S. (Opp. at 8–14.)

***First***, the Opposition inexplicably copies pages of allegations from the Complaint regarding statements that InMode's products are "FDA-cleared" in the U.S.—which is indisputably true. (*Id.* at 8–12.) The Opposition then claims that InMode also marketed its products for uses "beyond the FDA clearance." (*Id.*) However, ***none*** of the allegations make clear whether they concern U.S. versus non-U.S. marketing. (*Id.*) The Opposition leaps to the conclusion that some of these statements might relate to U.S. marketing simply because they were made on "calls with U.S. analysts." (*Id.* at 13.) Again, that is nonsensical. Equity analysts analyze companies' entire

---

[11] In *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 264 (3d Cir. 2009), by contrast, the CFO stated that "[t]here is no new specific discounting policy," while "[t]he Complaint alleges that Avaya provided significant and unusual discounts to some of its biggest customers."

12

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

operations, not just those in the U.S. Indeed, it would be impossible to value a company like InMode, which generates substantial revenue and profit outside the U.S. (*see supra* at 9), without considering its non-U.S. operations. Plaintiffs' conclusory claim does not satisfy the "exacting requirements for pleading falsity" with particularity. (Mot. at 24).

The Opposition's footnoted speculation that "InMode marketed Morpheus8V in the United States for unapproved uses" (Opp. at 13 n.10) is not supported by any well-pleaded factual allegations. The Opposition points to videos posted by ***third-party*** "U.S. based customers to Facebook" and then speculates—with no factual support—that they were "prepared by InMode." (*Id.*; Mot. at 31.) Two low-level "CWs U.S. sales representatives" vaguely allege that they were trained by unspecified people at unspecified times to "market the product as FDA-approved for stress urinary incontinence," which lacks particularity. (Opp. at 13 n.10; Mot. at 31.) And the Opposition speculates that a purported reference to "FDA-approval" at a meeting in an unspecified location somehow demonstrates a widespread off-label marketing campaign in the U.S. (Opp. at 13 n.10; *see supra* Section II.) The Opposition cannot point to a single factual allegation in the Complaint to suggest that off-label marketing was so rampant in the U.S. as to render Defendants' statements false or misleading, which is what the Opposition's own authority requires.[12]

***Second***, even if any of the challenged statements related to U.S. marketing (which is not adequately alleged in the Complaint), they were not misleading in context. The FDA approved both Evolve and Evoke as systems designed "to deliver non-thermal RF energy to the skin and subdermal fat," and for muscle stimulation, which is entirely consistent with the manner in which Defendants described them. (Opp. at 8–10; Mot. at 5–6, 30; Exs. 6, 11.) The FDA also approved vTone, which like Morpheus8V attached to the EmpowerRF platform, as a "vaginal applicator" that works on "muscle contraction by electrical pulsing." (Opp. at 11, 13, Mot. at 6, 31; Ex. 16.) The Opposition simply repeats the Complaint's allegations while ignoring the FDA's actual approvals, which demonstrably contradict those allegations. (Opp. at 12.) This tactic cannot survive dismissal because the Court "need not accept as true allegations that contradict matters properly subject to judicial

---

[12] *See, e.g.*, *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1033 (C.D. Cal. 2008) (off-label marketing pled by allegations concerning "color coded spreadsheets, PowerPoints presentations," "unpublished study results," and "a list of 'excellent questions' to ask" customers).

13

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

notice" or are "incorporated by reference into the complaint." *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2015) (collecting cases).[13]

**Third**, the Opposition confirms that the challenged statements regarding safety and clinical studies are not actionable misstatements. (Opp. at 13–14 & n.12.) It is well-settled that "challenged statements regarding [a company's] safety and reliability" are inactionable "corporate puffery." *Barnes v. Edison Int'l*, 2022 WL 822191, at *1 (9th Cir. Mar. 18, 2022); *see also City of Roseville Emps. Ret. Sys. v. Sterling Fin. Corp.*, 47 F. Supp. 3d 1205, 1220 (E.D. Wash. 2014) ("[T]he term 'safe and sound' constitutes immaterial corporate puffery."), *aff'd*, 691 F. App'x 393 (9th Cir. 2017).[14] Even if these statements were actionable (which they are not), the Opposition simply *assumes* that "InMode's technology was not 'safe' because" its products "were marketed in an unsafe manner beyond the scope of FDA-approved indications." (Opp. at 14.) The Opposition again conflates off-label marketing with safety and fails to identify a single well-pleaded factual allegation that any such off-label usage was unsafe. To the contrary, the Opposition admits that "the FDA approved" InMode's devices for certain of these uses "before the end of the Class Period" (*id.* at 12–13), which would not have happened if the devices were unsafe (Mot. at 31–32).

The Opposition does not dispute that Mizrahy's statements that InMode was "working closely with leading plastic surgeons" who "endorse[d]" its products, "spending a lot of money on studies and all kind of checking for every indication that we claim," and "invest[ing] resources in developing our clinical studies" are "literally true." (Opp. at 14 & n.12.) The Opposition assumes that the studies' doctors were "conflicted" and "the studies were biased" because InMode paid them, but the Company fully disclosed that practice. (*Id.*) The Opposition cannot point to a single factual allegation challenging the studies themselves, which is what its own authority requires.[15]

**WILLKIE FARR & GALLAGHER LLP**
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

---

[13] The Opposition concedes that the FDA approved a specific Evolve applicator "for fat trimming" "before the end of the Class Period." (Opp. at 12–13; Mot. at 30; Ex. 10.) It is therefore unsurprising that CWs 1 and 4, who worked at InMode towards the end of the Class Period (¶¶ 24, 27), "recall[ed] that Evolve was marketed" to "tighten skin, melt the fat, as well as tone muscles" (Opp. at 9).

[14] In *In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d 821 (N.D. Cal. 2014), by contrast, the company made specific representations challenging "articles published and papers written questioning patient safety and efficacy associated with" the company, which was not puffery.

[15] *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1009–10 (9th Cir. 2018) (FDA warned company that study results have "a high degree of uncertainty and were likely to change with the accumulation of additional data"); *In re Questcor Sec. Litig.*, 2013 WL 5486762, at *10–12 (C.D.

14

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

## IV.    The Claims Against The Individual Defendants Should Be Dismissed.

The Opposition does not even try to respond to the Motion's point that the Complaint fails to adequately allege direct liability against the Individual Defendants. (*See* Mot. at 33–34.) Plaintiffs have thus abandoned those Section 10(b) claims. *See Rozier v. Dep't of Homeland Sec. Fed. Protective Serv.*, 2022 WL 2199938, at *3 (C.D. Cal. Mar. 7, 2022) ("plaintiff's failure to address in opposition brief claims challenged in a motion to dismiss" is "an abandonment of those claims").

The Opposition argues exclusively that the Individual Defendants can be held secondarily liable as "control persons" under Section 20(a) of the Exchange Act, but that requires that the Complaint "plead a primary violation" of Section 10(b). . (Opp. at 34–35 & n.39.) The Opposition thus admits that these "control-person claims" must be dismissed where, as here, the Complaint fails to "state[] a 10(b) claim." (*Id.*; *see* Mot. at 34–35.) The Opposition also baldly claims that "Lakhani, Theodorou, and Kreindel clearly exercised actual power or control over InMode," but notably does not cite any supporting allegations in the Complaint. (Opp. at 35.) This is unsurprising because the Opposition does not dispute that the Complaint makes only boilerplate and impermissible group pleading allegations. (Mot. at 35 (citing ¶¶ 23, 214–15).) To try to get around this, the Opposition appears to limit the control-person claims against Lakhani, Theodorou, and Kreindel to the statements each one "[a]ctually ma[de]" (Opp. at 35), all of which are not actionable or are not materially misleading (*see supra* Section III). Finally, the Opposition recites Lakhani, Theodorou, and Kreindel's titles (Opp. at 35), but its own authority holds that "[a]n individual's status as an officer or director of the issuing corporation is insufficient, standing alone, to demonstrate the exercise of control." *Petrie v. Elec. Game Card, Inc.*, 2015 WL 475958, at *6 (C.D. Cal. Feb. 5, 2015). At bottom, the Opposition cannot point to a single well-pleaded allegation that Lakhani, Theodorou, or Kreindel controlled "the day-to-day affairs of the corporation," its SEC disclosures, or oral statements by others. *Id.* The claims against them should be dismissed.

### CONCLUSION

The Court should dismiss the Complaint in its entirety and with prejudice.

---

Cal. Oct. 1, 2013) (company "deliberately concealed adverse test results by terminating studies whose results would not benefit" the company).

15

Date: July 21, 2025

**WILLKIE FARR & GALLAGHER LLP**

By:    */s/ Glenn K. Vanzura*
Glenn K. Vanzura

Glenn K. Vanzura (SBN 238057)
GVanzura@willkie.com
Arev H. Hovsepian (SBN 348222)
AHovsepian@willkie.com
Zoe R. Goldberg (SBN 353799)
ZGoldberg@willkie.com
Johnathan J. Vaknin (SBN 356879)
JVaknin@willkie.com
2029 Century Park East, Suite 2900
Los Angeles, CA 90067-2905
Telephone:    (310) 855-3000

Joshua S. Levy (*Admitted Pro Hac Vice*)
JLevy@willkie.com
1875 K Street, N.W.
Washington, D.C. 20006
Telephone:    (202) 303-1147

*Attorneys for Defendants InMode Ltd., Moshe Mizrahy, Yair Malca, Shakil Lakhani, Spero Theodorou, and Michael Kreindel*

16

REPLY ISO DEFENDANTS' MOTION TO DISMISS

**Certificate of Compliance**

Pursuant to paragraph 3 of the Court's Order Granting Joint Stipulation Re Amended Briefing Schedule For Defendants' Motions To Dismiss (ECF No. 75), dated March 24, 2025, the undersigned, counsel of record for Defendants, certifies that the Reply memorandum in support of this Motion does not exceed 15 pages.

Date: July 21, 2025                              By:   */s/ Glenn K. Vanzura*
                                                      Glenn K. Vanzura

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310.855.3000

17

REPLY ISO DEFENDANTS' MOTION TO DISMISS