**WILLKIE FARR & GALLAGHER LLP**
Glenn K. Vanzura (SBN 238057)
  GVanzura@willkie.com
Arev H. Hovsepian (SBN 348222)
  AHovsepian@willkie.com
Zoe R. Goldberg (SBN 353799)
  ZGoldberg@willkie.com
2029 Century Park East, Suite 2900
Los Angeles, CA 90067-2905
Telephone:     (310) 855-3000

Joshua S. Levy (*Admitted Pro Hac Vice*)
  JLevy@willkie.com
1875 K Street, N.W.
Washington, D.C. 20006
Telephone:     (202) 303-1000

*Attorneys for Defendants*
*InMode Ltd., Moshe Mizrahy,*
*Yair Malca, Shakil Lakhani,*
*Spero Theodorou, and Michael Kreindel*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| IN RE INMODE LTD. SECURITIES LITIGATION | Case No. 2:24-cv-1219-MEMF-MBK <br><br> <u>CLASS ACTION</u> <br><br> Hon. Maame Ewusi-Mensah Frimpong <br> Courtroom 8B – First Street |
| THIS DOCUMENT RELATES TO: <br> ALL ACTIONS | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> *Filed concurrently with Request to Consider Document Under The Incorporation-By-Reference Doctrine or By Judicial Notice in Their Motion To Dismiss, Declaration of Glenn K. Vanzura, and [Proposed] Order* <br><br> Date:         March 26, 2026 <br> Time:         10:00 a.m. <br> Crtrm.:       8B <br><br> Action Filed:   February 14, 2024 <br> Trial Date:      None Set |

*Vertical left margin:* **WILLKIE FARR & GALLAGHER LLP** · 2029 CENTURY PARK EAST, SUITE 2900 · LOS ANGELES, CA 90067 · 310-855-3000

**WILLKIE FARR & GALLAGHER LLP**
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 26, 2026, at 10:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 8B of the above-titled Court, located at 350 W. 1st Street, Los Angeles, California 90012, Defendants InMode Ltd. ("InMode" or the "Company"), Moshe Mizrahy ("Mizrahy"), Yair Malca ("Malca"), Shakil Lakhani ("Lakhani"), Spero Theodorou ("Theodorou"), and Michael Kreindel ("Kreindel"; together with Mizrahy, Malca, and Lakhani, the "Individual Defendants"; together with InMode, "Defendants"), will and hereby do move to dismiss the claims asserted against them in the October 14, 2025 Second Amended Complaint for Violations of the Federal Securities Laws (the "SAC"; ECF No. 93) filed by Lead Plaintiffs Meitav Provident and Pension Funds Ltd., Meitav Mutual Funds Ltd., Kranot Hishtalmut Le Morim Tichoniim Morey Seminarim Ve Mefakhim Hevra Menahelet Ltd., and Kranot Hishtalmut Le Morim Ve Gananot Hevra Menahelet Ltd. (collectively, "Plaintiffs"). This Motion is made pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u–4, on the ground that the Complaint fails to state a claim for which relief can be granted. Defendants respectfully request that the Court dismiss the SAC in its entirety with prejudice.

This Motion is based on this Notice Of Motion, the Memorandum Of Points And Authorities in support thereof, Defendants' Request To Consider Document Under The Incorporation-By-Reference Doctrine Or By Judicial Notice in Their Motion To Dismiss, and the Declaration of Glenn K. Vanzura ("Vanzura Declaration" or "Vanzura Decl."), all other filings with the Court in this action, and such further evidence and argument as the Court may permit. The Defendants also submit herewith a Proposed Order.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on November 24, 2025.

2

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

Date: December 5, 2025

**WILLKIE FARR & GALLAGHER LLP**


By:   */s/ Glenn K. Vanzura*
        Glenn K. Vanzura

Glenn K. Vanzura (SBN 238057)
GVanzura@willkie.com
Arev H. Hovsepian (SBN 348222)
AHovsepian@willkie.com
Zoe R. Goldberg (SBN 353799)
ZGoldberg@willkie.com
2029 Century Park East, Suite 2900
Los Angeles, CA 90067-2905
Telephone:    (310) 855-3000

Joshua S. Levy (*Admitted Pro Hac Vice*)
JLevy@willkie.com
1875 K Street, N.W.
Washington, D.C. 20006
Telephone:    (202) 303-1000

*Attorneys for Defendants*
*InMode Ltd., Moshe Mizrahy,*
*Yair Malca, Shakil Lakhani,*
*Spero Theodorou, and Michael Kreindel*

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

**TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT ........................................................................................................1

BACKGROUND ...........................................................................................................................4

    A.    The Court Grants In Part Defendants' Motion To Dismiss The FAC. ...................4

    B.    The SAC's Minimal New And Revised Allegations. ..........................................5

LEGAL STANDARD....................................................................................................................7

ARGUMENT ...............................................................................................................................7

    I.    The SAC Again Fails To Plead Loss Causation For The Marketing And Safety Statements. ...............................................................................................7

        A.    The Court Should Again Reject Plaintiffs' Attempt To Plead Loss Causation Based On A Materialization-Of-The-Risk Theory Concerning InMode's Revised Revenue Guidance. ...................................8

        B.    The SAC Again Fails To Otherwise Plead Loss Causation For The Marketing Statements And The Safety Statements. .................................11

    II.    The SAC Fails To Plead Facts Sufficient To Show That The Pricing Statements Were Materially Misleading Or Made With Fraudulent Intent...........14

    III.    The SAC Violates The Court's Order, Which Dismissed Ten Safety Statements "Without Leave To Amend." ..............................................................20

    IV.    The SAC Fails To Adequately Plead Claims Against The Individual Defendants…..................................................................................................21

    V.    The SAC Should Be Dismissed Without Leave To Amend. ...............................25

CONCLUSION............................................................................................................................25

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

**TABLE OF AUTHORITIES**

*Page(s)*

**Cases**

*In re Amgen Inc. Sec. Litig.*,
544 F. Supp. 2d 1009 (C.D. Cal. 2008) ...................................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................................7

*In re Ashworth, Inc. Sec. Litig.*,
2001 WL 37119391 (S.D. Cal. Dec. 3, 2001)...........................................................................6

*Askins v. U.S. Dep't of Homeland Sec.*,
899 F.3d 1035 (9th Cir. 2018) .............................................................................................2, 14

*In re Bare Escentuals, Inc. Sec. Litig.*,
745 F. Supp. 2d 1052 (N.D. Cal. 2010) ..................................................................................23

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) ..................................................................................................10

*Buckman Co. v. Pls.' Legal Comm.*,
531 U.S. 341 (2001)................................................................................................................12

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020) ....................................................................................................8

*Carson v. Depuy Spine, Inc.*,
365 F. App'x 812 (9th Cir. 2010) ...........................................................................................12

*City of Hialeah Emps.' Ret. Sys. v. Peloton Interactive, Inc.*,
153 F. 4th 288 (2d Cir. 2025) .................................................................................................19

*City of Royal Oak Ret. Sys. v. Juniper Networks*,
2013 WL 2156358 (N.D. Cal. May 17, 2013) ..........................................................................6

*In re Cloudera*,
121 F. 4th 1180 (9th Cir. 2024) ..............................................................................................14

*In re Daou Sys. Inc.*,
411 F.3d 1006 (9th Cir. 2005) ................................................................................................10

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)..................................................................................................................9

*Espy v. J2 Glob., Inc.*,
99 F.4th 527 (9th Cir. 2024) ...................................................................................................25

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

*Ferraro Family Found., Inc. v. Corcept Therapeutics Inc.*,
501 F. Supp. 3d 735 (N.D. Cal. 2020) ...............................................................................12

*Fin. Acquisition Partners LP v. Blackwell*,
440 F.3d 278 (5th Cir. 2006) .................................................................................................6

*Foman v. Davis*,
371 U.S. 178 (1962) ..............................................................................................................25

*In re Gen. Motors Co. Sec. Litig.*,
773 F. Supp. 3d 429 (E.D. Mich. 2025) .........................................................................19, 20

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
763 F. Supp. 3d 1027 (C.D. Cal. 2025) ...............................................................................11

*In re Gilead Sci. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .............................................................................................13

*In re Gupta Corp. Sec. Litig.*,
900 F. Supp. 1217 (N.D. Cal. 1994) ....................................................................................24

*In re Hansen Nat. Corp. Sec. Litig.*,
527 F. Supp. 2d 1142 (C.D. Cal. 2007) ..........................................................................21, 24

*Huang v. Higgins*,
2019 WL 1245136 (N.D. Cal. Mar. 18, 2019).....................................................................12

*Huang v. Higgins*,
443 F. Supp. 3d 1031 (N.D. Cal. 2020) ...............................................................................12

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011).............................................................................................................3, 22

*Koehler v. Litehouse, Inc.*,
2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) .......................................................................6

*Lamontagne v. Tesla, Inc.*,
2024 WL 4353010 (N.D. Cal. Sept. 30, 2024) ................................................................18, 20

*Lloyd v. CVB Fin. Corp.*,
2012 WL 12883522 (C.D. Cal. Jan. 12, 2012) .....................................................................19

*Lloyd v. CVB Fin. Corp.*,
811 F.3d 1200 (9th Cir. 2016) ...............................................................................................9

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) .........................................................................................14, 16

*Mineworkers' Pension Scheme v. First Solar Inc.*,
881 F.3d 750 (9th Cir. 2018) .........................................................................................8, 9, 10

*In re Nektar Therapeutics Sec. Litig.*,
    34 F.4th 828 (9th Cir. 2022) .................................................................................4, 8, 9, 13

*Nuveen Municipal High Income Opportunity Fund v. City of Alameda*,
    730 F.3d 1111 (9th Cir. 2013) ...........................................................................................10

*Or. Pub. Emps. Ret. Fund v. Apollo Grp.*,
    774 F.3d 598 (9th Cir. 2014) ...........................................................................................7, 9

*Paracor Fin. Inc. v. GE Cap. Corp.*,
    96 F.3d 1151 (9th Cir. 1996) ...........................................................................................21

*In re Peregrine Sys., Inc. Sec. Litig.*,
    2005 WL 8158825 (S.D. Cal. Mar. 30, 2005) ......................................................21, 22, 23, 24

*Schaffer v. Horizon Pharma PLC*,
    2018 WL 481883 (S.D.N.Y. Jan. 18, 2018) ........................................................................13

*Smilovits v. First Solar Inc.*,
    119 F. Supp. 3d 978 (D. Ariz. 2015) ...................................................................................10

*Sneed v. Talphera, Inc.*,
    147 F.4th 1123 (9th Cir. 2025) .....................................................................................15, 20

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007).......................................................................................................3, 7, 15

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) .............................................................................................6

*W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
    495 F. Supp. 3d 622 (N.D. Ill. 2020) ...................................................................................19

*Webb v. SolarCity Corp.*,
    884 F.3d 844 (9th Cir. 2018) .....................................................................................21, 22, 23

*Yuan v. Facebook, Inc.*,
    2021 WL 4503105 (N.D. Cal. Sept. 30, 2021) .......................................................................6

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) .............................................................................................25

**Statutes**

15 U.S.C. § 78u–4.........................................................................................................15, 16

15 U.S.C. § 78t(a) .........................................................................................................21

21 U.S.C. § 396...............................................................................................................12

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

**Rules**

Fed. R. Civ. P. 8 ................................................................................................................7

Fed. R. Civ. P. 9(b) ...............................................................................................1, 7, 9, 15

Fed. R. Civ. P. 12(b)(6)......................................................................................................1

Fed. R. Civ. P. 54(b) .....................................................................................................2, 14

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants respectfully submit this Memorandum Of Points And Authorities in support of their Motion To Dismiss The SAC, pursuant to Rule 9(b), Rule 12(b)(6), and the PSLRA.

**PRELIMINARY STATEMENT**

Plaintiffs' SAC again attempts to articulate the same three liability theories that their January 31, 2025 Amended Complaint (the "FAC"; ECF No. 64) advanced. Those three theories together challenge 25 statements concerning: (1) InMode's compliance with FDA regulations regarding on-label marketing (the "Marketing Statements"); (2) the safety of InMode's products and the Company's compliance with FDA regulations concerning injury reports (the "Safety Statements"); and (3) InMode's pricing for its platforms as compared to its pricing for the platforms' attachments (a/k/a "consumables") and as compared to competitors' pricing models (the "Pricing Statements"). The SAC fails to allege facts sufficient to plead a Section 10(b) claim or Section 20(a) claim under the Securities Exchange Act of 1934 for any of the three theories.

***First***, the Court's September 12, 2025 Order Granting In Part Defendants' Motion To Dismiss the FAC (the "Order"; ECF No. 91), dismissed all claims concerning the Marketing Statements and the Safety Statements. The Court should do so again for the same reasons. For each of those 19 total statements, the Court held that the FAC failed to plead the loss causation element of a Section 10(b) claim. As to the Marketing Statements, the Court held that the alleged February 17, 2023, and March 10, 2023, corrective disclosures did "not discuss any *off-label marketing* of InMode products," so "there is no 'truth' revealed by these articles that could correct any misstatement." (Order at 25 (emphasis in original).) As to the Safety Statements, the Court held that the same alleged corrective disclosures "fail[] for similar reasons," because they "do not contradict any statement about the safety of the devices themselves." (*Id.* at 32.)

The SAC does not cure any of the pleading deficiencies the Order identified. Indeed, the SAC relies on the exact same "corrective disclosures" as those identified in the FAC. The substance of those disclosures, of course, has not changed. It thus remains the case that none of those disclosures revealed anything about supposed off-label marketing, and none contradicted any of the Safety Statements. Accordingly, as with the FAC, the SAC should be dismissed with

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

respect to all Section 10(b) and Section 20(a) claims concerning the Marketing Statements and the Safety Statements for failure to plead loss causation.

*Second*, as to the Pricing Statements, the Court held that the FAC pled falsity, scienter, and loss causation, but the Court can and should revisit its determinations, because the Court is permitted on a motion to dismiss an amended complaint to analyze all claims, including those the Court previously upheld. *See Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018) ("[P]ermitting the filing of an amended complaint requires a new determination. That leaves the district court free to correct any errors or misunderstandings without having to find that its prior decision was clearly erroneous.") (cleaned up); Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

Respectfully, while the Order correctly recognized that the Pricing Statements were comparative statements, the Order overlooked Plaintiffs' failure to plead facts from which the Court can conclude that Mizrahy's and Malca's statements did not accurately describe the comparisons those individuals were drawing. The law requires Plaintiffs to allege facts about *both* sides of a comparative point. This makes sense because absent such allegations, it is impossible for the Court to determine whether the comparative statements were false or misleading. Consider the following example: A CEO represents that his Company A employs more people than its competitor, Company B. The plaintiff alleges Company A's employee headcount but fails to make any allegations concerning Company B's number of employees. Absent such allegations, it is impossible to determine whether the CEO's representation was false or misleading.

Here, some of the Pricing Statements compared InMode's pricing model to its competitors' pricing models. It is true that the SAC makes factual allegations concerning InMode's pricing model. Critically, though, the SAC does not make *any* factual allegations concerning the *competitors'* pricing models. Without such facts, Plaintiffs leave the Court with no ability to determine whether the comparisons were false or misleading. Similarly, some of the Pricing Statements compared InMode's platform prices to the prices for the platforms' attachments. Again,

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

it is true that the SAC makes factual allegations concerning InMode's platform prices. But, again, the SAC critically fails to make *any* factual allegations concerning the attachments' prices. And, again, without such allegations, the Court cannot determine whether the comparisons were false or misleading. For these reasons, the SAC does not plead falsity as to the Pricing Statements.

For the same reasons, it is impossible for the Court to draw from the SAC's allegations a "cogent and compelling" inference that either Mizrahy or Malca made the comparative Pricing Statements with scienter. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007). Absent any information about competitors' pricing or InMode's attachment prices, the Court cannot infer that Mizrahy or Malca intended to deceive investors when they drew comparisons between InMode's pricing and its competitors' pricing, or between platform and attachment prices. Indeed, the more compelling, innocent inference (which the law requires the Court to consider) is that Mizrahy and Malca believed in good faith that they were accurately describing the comparisons to which the Pricing Statements pointed.

***Third***, the Court should dismiss all claims against Theodorou, Kreindel, and Lakhani. If the Court dismisses the Section 10(b) claims (as the Court should), as a matter of law, it must also dismiss all claims against the Individual Defendants. Even if the Pricing Statements again survive dismissal under Section 10(b), each of those statements was made by either Mizrahy or Malca. Theodorou, Kreindel, and Lakhani were not the "makers" of any of the Pricing Statements, and they therefore cannot be held directly liable under Section 10(b) for those statements. *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). Those three individuals also cannot be held secondarily liable as "control persons" under Section 20(a) because the SAC does not even attempt to plead facts from which the Court can conclude that Theodorou, Kreindel, or Lakhani controlled InMode's pricing, or that those individuals had any control over (or even any role at all with respect to) the Pricing Statements.

For these and the reasons set forth more completely below, the Court should dismiss the SAC in its entirety, this time without leave to amend.

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

**WILLKIE FARR & GALLAGHER LLP**
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

## BACKGROUND[1]

### A.      The Court Grants In Part Defendants' Motion To Dismiss The FAC.

This Motion addresses Plaintiffs' second attempt to amend their complaint. Just as with the SAC, the FAC asserts Section 10(b) claims and Section 20(a) claims under the Securities Exchange Act of 1934. The Court's September 12, 2025 Order dismissed the FAC's Count I Section 10(b) claims for 19 of the 24 statements Plaintiffs challenged, and dismissed the Count II Section 20(a) "control person liability claims concerning Theodorou and Kreindel." (Order at 32.)

The Court dismissed all of the Section 10(b) claims concerning the Marketing Statements and Safety Statements because "Plaintiffs [had] not properly pleaded that" those statements "caused injury under a theory of loss causation." (*Id.* at 25, 31–32.) The Court first rejected the FAC's materialization-of-the-risk ("MOTR") theory of loss causation, because "[t]he Court agree[d] with Defendants that the Ninth Circuit has never expressly adopted a materialization of the risk or zone of risk theory of loss causation." (*Id.* at 19–20 (citing *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 838 n.6 (9th Cir. 2022)).) The Court further held that "the February and March *Capitol Forum* articles" (the "*TCF* articles") "cannot constitute corrective disclosures," because those articles discussed alleged "injuries from InMode products," but "do not discuss *off-label marketing* of InMode products—or explicitly state that the injuries described were from purportedly *off-label uses*." (*Id.* at 25, 31–32 (emphasis in original).) "Therefore, there is no 'truth' revealed by these articles that could correct any misstatement, because the statements in the article do not contradict any statement about the safety of the devices themselves." (*Id.*)

The Court also dismissed most of the Safety Statements "***without*** leave to amend," because they were not "material misrepresentations." (*Id.* at 26, 33.) The Court held that "two of these statements are so unverifiable that they are properly characterized as puffery and are therefore not actionable." (*Id.* at 26.) The Court next held that certain statements regarding InMode's Evolve

---

[1] Just as the Court did on Defendants' motion to dismiss the FAC, on this Motion, the Court can again consider judicially noticeable facts and documents, and documents incorporated by reference in the SAC. (Order at 13–14 (collecting cases).) References to "Ex." refer to exhibits to the accompanying Vanzura Declaration. Unless otherwise indicated, all alterations, quotations, and citations are omitted, and all emphasis is added.

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

platform were not misleading based on a close analysis of the "FDA approval," and the fact that "Plaintiffs do not plead particular evidence that the devices themselves are unsafe." (*Id.* at 28.) Finally, the Court rejected challenges to "general statements about the safety and efficacy of the products," because each statement was "not misleading and is therefore not actionable," "constitute[d] puffery," and/or was a "forward-looking statement[] protected by the PSLRA safe harbor provisions." (*Id.* at 29–31.)

As to the FAC's five Pricing Statements, the Court denied Defendants' first motion to dismiss. (*Id.* at 20–23, 32.) However, the Court dismissed the Section 10(b) claims based on the Pricing Statements against certain of the Individual Defendants, because the statements "were not made by Lakhani, Theodorou, or Kreindel, nor were they made in statements signed by these individuals." (*Id.* at 23.) The Court also dismissed the Section 20(a) claims against Theodorou and Kreindel, because they "clearly do not meet the requirements for control liability with respect to the" Pricing Statements. (*Id.*) The Court, however, denied Lakhani's motion to dismiss the Section 20(a) claim against him for the Pricing Statements. (*Id.*)

### B.    The SAC's Minimal New And Revised Allegations.

Although the Court gave Plaintiffs leave to amend some of their claims, the SAC mostly rehashes the dismissed FAC. (*See* ECF No. 93-1 (the "Redline").) For example, the SAC does not allege any additional facts to plead scienter, does not make any new confidential witness allegations, and does not correct the FAC's failure to supply information concerning Defendants' stock sales sufficient to plead scienter. (*See* Order at 18–19, 22.) Even more critically, the SAC does not allege any new corrective disclosures; that is, the SAC relies on all of the same corrective disclosures that the Court previously found were insufficient to plead loss causation for the Marketing and Safety Statements. (*See id*. at 25, 31–32.)

The SAC's most voluminous additions are nineteen new paragraphs concerning the Section 10(b) falsity element for the Marketing and Safety Statements. (SAC ¶¶ 91–109.) Notably, most of the challenged statements the SAC seeks to bolster were dismissed "***without leave to amend***," so the SAC's amended allegations concerning those statements violate the Court's Order. (Order at 33; *see infra* Section III.) Other of the new allegations are essentially an improper expert

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

report concerning the alleged falsity of the Marketing and Safety Statements; those allegations say nothing about any element of the Section 10(b) claim for the Pricing Statements. (Order at 36–49, 85–86; SAC ¶¶ 91–109, 194, 196.) In any event, those allegations should be stricken or disregarded, because it is settled law that expert "[a]ffidavits and declarations 'are not allowed as pleading exhibits unless they form the basis of the complaint.'" *Yuan v. Facebook, Inc.*, 2021 WL 4503105, at \*2 (N.D. Cal. Sept. 30, 2021) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)). Plaintiffs cannot end-run this rule by simply dropping an expert report into the body of the SAC.[2]

In any event, this Motion need not challenge (and the Court need not consider) the SAC's new falsity allegations. This is because the SAC (just like the FAC) fails to plead loss causation—an essential element of the Section 10(b) claim directed to the Marketing and Safety Statements. The SAC attempts to save Plaintiffs' failure to plead loss causation by making three new allegations. First, recognizing that the Order forecloses a MOTR theory of loss causation, the SAC engages in wordplay to substitute the phrase "foreseeable consequences" for "MOTR." (Redline at 88–89, 94–96; SAC ¶¶ 203, 210–12, 214.) In short, the SAC attempts to advance a MOTR theory in disguise. Second, the SAC adds a legal argument to incorrectly suggest that the Ninth Circuit has blessed some form of the MOTR theory of loss causation. (Redline at 94–95; SAC ¶ 211.) The Ninth Circuit clearly has not. (*See infra* Section I.A.) Third, the SAC adds characterizations of the February 17, 2023 *TCF* article that appear nowhere in the article. (Redline at 89–90; SAC ¶¶ 204–05.) Regardless, just as with the *TCF* article itself, Plaintiffs'

---

[2] Not surprisingly, courts routinely strike portions of a complaint that "consist[] of opinions" from an expert "specifically in the context of securities fraud litigation," because such opinions "cannot substitute for facts under the PSLRA." *Id.* at \*2–3 (collecting cases); *see also City of Royal Oak Ret. Sys. v. Juniper Networks*, 2013 WL 2156358, at \*7 (N.D. Cal. May 17, 2013) (quoting *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006)); *Koehler v. Litehouse, Inc.*, 2012 WL 6217635, at \*3 (N.D. Cal. Dec. 13, 2012) (striking expert's "conclusory assertions" from complaint); *In re Ashworth, Inc. Sec. Litig.*, 2001 WL 37119391, at \*3 (S.D. Cal. Dec. 3, 2001) (striking expert's "legal conclusions" from complaint). Accordingly, the Court should strike the nonfactual, conclusory opinions of Plaintiffs' purported expert from the SAC, and should not consider those allegations when deciding this Motion. (*See, e.g.*, SAC ¶¶ 42 and 105 ("Dr. Sheldon concluded . . . ."); *id.* ¶ 101 ("Dr. Sheldon emphasized . . . ."); *id.* ("Dr. Sheldon elaborated . . . ."); *id.* ¶ 102 ("Dr. Sheldon stated . . . ."); *id.* ¶¶ 103 and 106 ("Dr. Sheldon explained . . . ."); *id.* ¶ 107 ("Dr. Sheldon noted . . . .").)

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

characterizations do not describe anything that "corrected" or "revealed" that the Marketing or Safety Statements were false or misleading. (*See infra* Section I.B.)

Finally, the SAC adds an additional sentence to a Safety Statement. (Redline at 74–5; SAC ¶ 168.) However, the Court already dismissed that statement "without leave to amend." (Order at 33; *see infra* Section III.)

## LEGAL STANDARD

It is difficult to state a claim for securities fraud. "Securities fraud claims must satisfy both the requirements under Rule 9(b)," which requires Plaintiffs "to 'state with particularity the circumstances constituting fraud or mistake,'" (Order at 16 (quoting Fed. R. Civ. P. 9(b)), and "the Private Securities Litigation Reform Act [], which 'requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention to deceive, manipulate, or defraud'" (*id.* (quoting *Tellabs*, 551 U.S. at 308)). However, the Order at times appeared to apply Rule 8 notice-pleading standards, which require only that "'a complaint must contain sufficient factual mater, accepted as true, to state a claim to relief that is plausible on its face.'" (*Id.* at 15–16 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also id.* at 21 ("Plaintiffs' allegation is plausible . . . ."); *id.* at 23 ("Plaintiffs plausibly plead . . . ."); *id.* (Plaintiffs "plausibly alleged").) As discussed below (*see infra* Section II), the Court should revisit certain rulings that did not apply the PSLRA and Rule 9(b)'s "heightened pleading standards" to "***all elements*** of a securities fraud action." *Or. Pub. Emps. Ret. Fund v. Apollo Grp.*, 774 F.3d 598, 604–05 (9th Cir. 2014).

## ARGUMENT

## I.    The SAC Again Fails To Plead Loss Causation For The Marketing And Safety Statements.

As with the FAC, the SAC does not adequately plead the loss causation element of Plaintiffs' Section 10(b) claim for the Marketing and Safety Statements. Of course, failure to plead any one element means that the Court must dismiss that claim. *Or. Pub.*, 774 F.3d at 605.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

Therefore, the Court need not analyze the other elements; Plaintiffs' continued failure to plead loss causation is reason enough to dismiss the SAC as to the Marketing and Safety Statements.[3]

As the Court previously recognized, "[t]o prove loss causation with corrective disclosures, a plaintiff must show that '(1) a corrective disclosure revealed, in whole or in part, the truth concealed by the defendant's misstatements; and (2) disclosure of the truth caused the company's stock price to decline and the inflation attributable to the misstatements to dissipate.'" (Order at 19 (quoting *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 791 (9th Cir. 2020)).) "A corrective disclosure must provide new information to the market in a way that the market would 'reasonably perceive[] these posts as revealing the falsity of [the defendant's] prior misstatements.'" (*Id.* (quoting *Nektar*, 34 F.4th at 840).) "Plaintiffs thus must show a 'causal connection between the fraud and the loss by tracing the loss back to the very facts about which the defendant lied.'" *Nektar*, 34 F.4th at 838 (quoting *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018)).

### A. The Court Should Again Reject Plaintiffs' Attempt To Plead Loss Causation Based On A Materialization-Of-The-Risk Theory Concerning InMode's Revised Revenue Guidance.

The SAC advances a MOTR theory in disguise for the Pricing and Marketing Statements. (Redline at 94–96; SAC ¶¶ 211–15.) Plaintiffs' Paragraph 17 revisions give away the game: simply deleting "when the risks materialized" while baldly asserting that the alleged misstatements "caused" revised guidance does not hide that this is just a repeat of their MOTR theory. (Redline at 6–7.) Regardless of what the SAC calls it, the key is that the SAC does not plead a single fact to show that the revised guidance concerning future revenue expectations had anything to do with the Company's pricing practices, its marketing practices, or the safety of its devices.

The SAC also cites *First Solar* in a doomed attempt to suggest to the Court that the Ninth Circuit has blessed some form of the MOTR theory of loss causation. (SAC ¶¶ 211, 214.) Plaintiffs

---

[3] For this reason, with limited exceptions noted below (*see infra* Section II), this Motion does not challenge the falsity and scienter elements of the Section 10(b) claim for the Marketing and Safety Statements (although Defendants respectfully do not concede that Plaintiffs have adequately pled or can prove those elements).

raised this exact same argument during the August 2025 oral argument on Defendants' first motion to dismiss. (*See* Ex. 2 (Aug. 14, 2025 Oral Arg. Tr.) at 24:16–25:9 (citing *First Solar*).) The Court subsequently and correctly determined that the Ninth Circuit has not adopted the MOTR theory. (*See* Order at 19–20.) Indeed, since *First Solar* was published in **2018**, the Ninth Circuit has pointedly clarified that it has **not** adopted the MOTR theory of loss causation. Plaintiffs know this because Defendants' first motion to dismiss explained—and the Court's Order relied on—the Ninth Circuit's more recent **2022** precedential *Nektar* decision, which expressly advised that the Ninth Circuit "has never expressly adopted that [MOTR] theory," and has instead "continued to require securities fraud plaintiffs to allege that the defendant lied ***about the very facts*** causing the plaintiffs' losses." (Order at 19 (quoting *Nektar*, 34 F.4th at 838 n.6).)

Moreover, the SAC misreads and selectively quotes from *First Solar*. Contrary to the SAC's claim, that case does not hold that a plaintiff can plead loss causation by simply claiming that "'the stock price fell upon the revelation of an earnings miss' or revised guidance." (SAC ¶¶ 211, 214 (quoting *First Solar*, 881 F.3d at 754).) *First Solar* goes on to make clear that, to "satisfy loss causation," plaintiffs must also "adequately plead[] a 'causal connection between the material misrepresentation and the loss.'" 881 F.3d at 753 (quoting *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1211 (9th Cir. 2016) (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005))). Otherwise, shareholder plaintiffs could always plead an earnings miss or revised guidance as a corrective disclosure by simply asserting, without any factual basis, that the miss or revision was "proximately caused" by the fraud. That is exactly what Plaintiffs are trying to do here, and that is not the law. Such a standard would render superfluous the requirement that plaintiffs plead the loss causation element for a Section 10(b) claim **with particularity**, and the Ninth Circuit has never adopted such a lenient pleading standard. *Id.* (pleading loss causation requires satisfying "the familiar test for proximate cause"); *see also Or. Pub.*, 774 F.3d at 605 ("Rule 9(b) applies to all elements of a securities fraud action, including loss causation.").

The facts in *First Solar* illustrate the point. There, the plaintiffs alleged that First Solar concealed certain manufacturing defects from investors, "misrepresented the cost and scope of the defects, and reported false information on their financial statements" about those defects. *First*

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

9

*Solar*, 881 F.3d at 752. The plaintiffs tied those defects to specific earnings releases and guidance, which specifically "disclosed the [manufacturing] defect," described costs to replace defective products, and revealed that the company missed "consensus estimates on its earnings per share" and "reduced its revenue guidance" because of those costs. *Smilovits v. First Solar Inc.*, 119 F. Supp. 3d 978, 994–96, 998–1000 (D. Ariz. 2015), *aff'd sub nom. Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750 (9th Cir. 2018). In addition, internal emails and analyst reports "recognized that the [manufacturing] defect caused the stock drop." *Id*. Thus, plaintiffs could "prove loss causation by showing that the stock price fell upon the revelation of an earnings miss," but only because there was a direct and related "causal connection between *the facts* misrepresented" and the earnings misses. *First Solar*, 881 F.3d at 752, 754 (emphasis in original).[4]

Here, unlike in *First Solar*, the SAC's attempt to connect InMode's revised revenue guidance to the "revelation" of one or more alleged misstatements is wholly conclusory. The SAC simply ***theorizes*** that InMode's "practice of heavily discounting its products," and "inability to continue marketing several of its products for improper purposes and without the permission of the FDA in North America, ***caused*** InMode's revised guidance," and "[t]he revised revenue guidance was a ***foreseeable consequence*** of InMode's undisclosed practice of heavily discounting the systems, and of the off-label marketing practices in North America." (SAC ¶¶ 211, 214.) Those theories are pure speculation untethered to any facts. That is, the SAC does not plead any particular facts to "show a 'casual connection' between the fraud and the loss" or to "trac[e] the loss back to 'the very facts about which the defendant [allegedly] lied.'" *First Solar*, 881 F.3d at 753 (quoting *Nuveen*, 730 F.3d at 1119–20).

---

[4] In *First Solar*, the Ninth Circuit relied on *In re Daou Systems Inc.*, 411 F.3d 1006 (9th Cir. 2005), *Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982 (9th Cir. 2008), and *Nuveen Municipal High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111 (9th Cir. 2013). In *Daou* and *Berson*, the alleged misstatements concerned the companies' "accounting practices" and financial reporting itself, so the facts misrepresented were necessarily later revealed by disclosures made in the companies' financials. *Daou*, 411 F.3d at 1026–27; *Berson*, 527 F.3d at 989. In *Nuveen*, the Ninth Circuit again expressly advised that "[t]he Ninth Circuit has not adopted the materialization of the risk approach" to loss causation. 730 F.3d at 1122 n.5.

Most tellingly, the SAC does not add to the FAC *a single new fact* to support Plaintiffs' speculative theory that InMode's pricing practices, its marketing practices, or the safety of its products "triggered" the revised guidance. Indeed, the revised guidance disclosures, on their face, (1) *do not* have anything to do with InMode's pricing practices, its marketing practices, or the safety of its products; and (2) *do* expressly explain the bases for the revised guidance (*see* SAC ¶¶ 208, 213), none of which had anything to do with any of the statements challenged in this case. *See In re Genius Brands Int'l, Inc. Sec. Litig.*, 763 F. Supp. 3d 1027, 1042 (C.D. Cal. 2025) (dismissing alleged corrective disclosures that "included information and analysis unrelated to any alleged misrepresentations that could explain the negative market reaction").[5]

For all of these reasons, the Court should again follow the Order's approach, and should "not analyze Plaintiffs' materialization of risk arguments" in the SAC's paragraphs 203, 211, and 214. (Order at 20.)

**B.     The SAC Again Fails To Otherwise Plead Loss Causation For The Marketing Statements And The Safety Statements.**

As an initial matter, the SAC does not even try to amend Plaintiffs' loss causation allegations concerning the March 10, 2023, *TCF* article, or make any new allegations regarding a corrective disclosure on that date. (Redline at 90; SAC ¶¶ 206–07.) The Court should thus again reject Plaintiffs' attempt to plead loss causation for the Marketing and Safety Statements based on the March 10, 2023, *TCF* article, for the same reasons articulated in the Order. (*See* Order at 25, 31–32.)

Aside from a doomed attempt to plead a disguised MOTR theory, the SAC's *only* other amendment to the loss causation allegations again relies on the exact same February 17, 2023,

---

[5] The Court should also note that it defies common sense to speculate that InMode's revised revenue guidance in 2023 was "caused" by the Company's allegedly concealed practices. According to the SAC, InMode had been selling its platforms at discounted prices for at least four years by this point, and supposedly had also been engaging in off-label marketing for years. (SAC ¶¶ 39–65.) The SAC's speculative "these-practices-'caused'-InMode's-revised-guidance-in-2023" theory does not even attempt to explain how it is that the Company's alleged long-standing pricing and marketing practices had no effect on InMode's revenue guidance for years, but then magically and suddenly did in 2023.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

*TCF* article on which the FAC relied. (Redline at 89–90; SAC ¶¶ 204–05.) The Court's previous Order already considered and rejected this entire article as a corrective disclosure because it did "not discuss *off-label marketing* of InMode products," so "there is no 'truth revealed by th[is] article[] that could correct any misstatement." (Order at 25, 31–32 (emphasis in original).) The SAC's new narrative concerning the same *TCF* article describes the article's report of a single instance **two years before** the article was published in which a single doctor supposedly used a single device on her patients, allegedly causing injuries. (Redline at 89–90; SAC ¶¶ 204–05.) The SAC's new narrative does not plead loss causation for several independent reasons.

*First*, the single incident was described in the article when Plaintiffs alleged that this was a corrective disclosure in the FAC (Ex. 1); nothing has changed. The SAC makes no new allegation to show that InMode or its marketing practices had anything to do with this single doctor's usage.

*Second*, the *TCF* article's description of a single anecdotal instance cannot have revealed to investors the purported existence of a widespread off-label marketing campaign, thus causing investor losses. *See Huang v. Higgins*, 443 F. Supp. 3d 1031, 1049 (N.D. Cal. 2020) ("While Plaintiffs have sufficiently alleged that at least one Depomed salesperson marketed NUCYNTA off-label, the SAC does not support the inference that this practice was systematic and widespread."); *Ferraro Family Found., Inc. v. Corcept Therapeutics Inc.*, 501 F. Supp. 3d 735, 755–57 (N.D. Cal. 2020) ("Plaintiffs have adequately alleged only that a handful of individual sales representatives engaged in off-label marketing," so "Plaintiffs have failed to sufficiently allege a company-wide off-label marketing scheme").

*Third*, and in any event, the article describes device **usage**, not **marketing**. Critically, the article did not reveal to investors anything about InMode's marketing practices, much less that InMode had engaged in off-label marketing or that the doctor's use of the device was tied in any way to InMode's marketing practices.[6] *See Huang v. Higgins*, 2019 WL 1245136, at *9 (N.D. Cal.

---

[6] There is nothing necessarily remarkable, illegal, or wrongful about a doctor using a device for off-label purposes. While a device may not be marketed or promoted for unapproved uses, federal law "expressly protects off-label use" by doctors. *Carson v. Depuy Spine, Inc.*, 365 F. App'x 812, 815 (9th Cir. 2010) (citing 21 U.S.C. § 396). Indeed, "the Supreme Court has emphasized that off-label use by medical professionals is not merely legitimate but important in the practice of medicine." *Id.* (citing *Buckman Co. v. Pls.' Legal Comm.*, 531 U.S. 341, 350 (2001)).

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

Mar. 18, 2019) ("The mere fact that prescriptions were written for off-label purposes . . . does not necessarily imply that Horizon was actively marketing its drugs as such.") (quoting *Schaffer v. Horizon Pharma PLC*, 2018 WL 481883, at *8 (S.D.N.Y. Jan. 18, 2018)).

**Fourth**, even if that single doctor's supposed usage of InMode's devices was somehow related to the Marketing and Safety Statements, the February 17, 2023, *TCF* article did not reveal as much. Nor did the article reveal anything to investors about any purported off-label usage. The article on its face says nothing about whether the doctor had used the device for an off-label purpose. (Ex. 1.) The article merely referenced unspecified complaints "to the Better Business Bureau" (the "BBB"), and did not describe the contents of those complaints, much less reveal that the complaints arose from off-label usage or marketing. (*Id.*) Plaintiffs apparently rely on the BBB complaints themselves to conclude in their 2025 SAC that the doctor had used the devices for off-label purposes, but the SAC does not—and cannot—allege that those complaints (which were lodged in 2021) were publicized to investors on February 17, 2023. (SAC ¶ 204; Vanzura Decl. ¶ 3 Ex. 1.) Because any information in the BBB complaints was not disclosed to investors at that time, they could not have "provide[d] new information to the market," let alone have "reveal[ed] the truth about InMode's challenged statements," thus causing the February 17, 2023 stock price decline and investor losses. (Order at 19 (citing *Nektar*, 34 F.4th at 840).)

**Finally**, the Court should note that the SAC's falsity theory directly contradicts its loss causation theory. The SAC theorizes that Defendants hid from investors the Company's supposed off-label marketing practices until February 17, 2023. This general theory is consistent with other shareholder class actions in which plaintiffs claim that the company engaged in off-label marketing unbeknownst to investors. The SAC's factual allegations, though, are materially different from those other cases. *See, e.g., In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049, 1051 (9th Cir. 2008); *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1033 (C.D. Cal. 2008). In those cases, the plaintiffs made allegations to show that the defendants **concealed** their wrongful marketing practices. Here, though, the very evidence of supposed off-label marketing to which the SAC points was **not** concealed activity. The SAC instead points only to Defendants' own **public statements** as the **actual off-label marketing itself**. (SAC ¶¶ 69–70, 72–84, 86, 88–90, 111–14, 117–19, 129.)

Indeed, Plaintiffs **admit** that the purported off-label marketing to which the SAC points were public communications, widely known to the investing market before February 17, 2023. (*Id*. ¶ 81 (off-label marketing took the form of statements that "were circulated in a medium easily accessible to investors, and were part of the total mix of information publicly available")).) Thus, according to the SAC's own allegations, Defendants' off-label marketing throughout the class period took the form of public proclamations to investors, but Defendants simultaneously somehow hid that same marketing from investors until February 17, 2023. That theory makes no sense.

For all of these reasons, the Court should again dismiss Plaintiffs' complaint for failure to plead loss causation for the Marketing and Safety Statements.

## II.    **The SAC Fails To Plead Facts Sufficient To Show That The Pricing Statements Were Materially Misleading Or Made With Fraudulent Intent.**

Respectfully, on this Motion, the Court can and should revisit its conclusions concerning Plaintiffs' falsity and scienter allegations for the Pricing Statements. "Once the plaintiff elects to file an amended complaint, the new complaint is the only operative complaint before the district court," which "requires a new determination." *Askins*, 899 F.3d at 1043. "When the defendant files a motion to dismiss the amended complaint, it may urge the district court to determine that the plaintiff's amended complaint did not cure the deficiencies of the initial complaint." *Id.* "The district court is not [] bound by any law of the case," and can therefore "reassess[] its own legal rulings in the same case" to "correct any errors or misunderstandings without having to find that its prior decision was clearly erroneous." *Id.* at 1042–43 (collecting cases); *see also* Fed. R. Civ. P. 54(b).

As the Court has correctly recognized, "[t]he PSLRA has exacting requirements for pleading 'falsity.'" *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008); (*see also* Order at 17). "A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false, does not meet this standard." *Metzler*, 540 F.3d at 1070. Rather, "the complaint must explain what is false or misleading about the purportedly fraudulent statement, and why it is false." *In re Cloudera*, 121 F. 4th 1180, 1187 (9th Cir. 2024) (collecting cases). "To decide whether a misstatement or omission can mislead, we need

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

to look at the context surrounding the statement." *Sneed v. Talphera, Inc.*, 147 F.4th 1123, 1131 (9th Cir. 2025) (collecting cases). "Context matters because we presume that a reasonable investor—who has money on the line—acts with care and seeks out relevant information." *Id.* "Sometimes other information outside the immediate document can form the context in which a reasonable investor would view a particular statement." *Id.*

The Court has also correctly recognized that the PSLRA further requires plaintiffs "to plead facts giving rise to a strong inference that the defendants acted with scienter." *Id.* at 1134 (citing *Tellabs*, 551 U.S. at 326); (*see also* Order at 18). "A strong inference arises 'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Sneed*, 147 F.4th at 1134 (quoting *Tellabs*, 551 U.S. at 324). "Showing scienter necessarily becomes harder when the allegedly misleading statements are not flagrantly false because in those cases an innocent alternative explanation becomes more likely." *Id.*

In *Sneed*, for example, a pharmaceutical company "marketed its under-the-tongue opioid with the slogan 'Tongue and Done' in advertisement displays and a speech at an investor conference." *Id.* at 1127. The plaintiffs brought securities fraud claims "alleging that the slogan misled investors because administering the opioid drug is more complex than just 'Tongue and Done' and thus its potential market would be more limited." *Id.* The Ninth Circuit, applying the heightened pleading standards imposed by Rule 9(b) and the PSLRA, held that "[c]onsidered in context, the 'Tongue and Done' slogan would not mislead a reasonable investor," because "a reasonable investor would not blindly accept a marketing slogan by itself when she has access to other contextual information." *Id.* at 1131–32. Rather, "a reasonable investor certainly knows not to trust a slogan without investigating further." *Id.* at 1132. The Ninth Circuit similarly held that there was "no strong inference of scienter," because the company's executives "most likely made a good-faith determination that the 'Tongue and Done' slogan would truthfully highlight [the drug's] major selling point," and "likely did not intend to defraud investors." *Id.* at 1134.

Here, Plaintiffs bear the burden to allege facts sufficient to explain the reasons that each of the Pricing Statements was supposedly false or misleading. *See* 15 U.S.C. § 78u–4(b)(1) ("[T]he

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."); *Metzler*, 540 F.3d at 1061 ("By requiring specificity, § 78u–4(b)(1) prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating why the defendant's alleged statements or omissions are deceitful."). The SAC, however, fails to allege facts about all of the points of comparison Mizrahy and Malca were making in their Pricing Statements. A reasonable investor would not have been misled, because she would have considered the entirety of the statements. Those statements did not speak only to discounting in a vacuum. They mentioned discounting in the context of drawing comparisons between InMode's pricing for its platforms as compared to their attachments, and in comparison to competitors' pricing models. Moreover, InMode's executives more likely made a good-faith determination that their comparisons were accurate, and the SAC does not allege any facts from which the Court can otherwise infer that they intended to defraud investors.

More specifically, the SAC, like the FAC, challenges five Pricing Statements, none of which were false or misleading in context. The first challenged Pricing Statement was made by Mizrahy during an August 5, 2020, analyst call. That statement related expressly and exclusively to InMode's strategy and pricing *outside the United States*:

> We decided not to market these two platforms [Evoke and Evolve] *outside U.S.* to spa market, but only to doctors to keep it in a high-price and with high value. And that's exactly what we will do in the next six months and also '21.
>
> * * *
>
> Just -- for example, *in China*, one of the procedures which are very attractive to doctors is to do drug delivery, and we're developing procedures like using Fractora to create some tunnels into the epidermis and to deliver drug into it, dry device combination. It's not a very expensive to produce machine, but there was a big market for it *in China* for whitening the skin and et cetera. And therefore, I don't – I'm not afraid that the gross margin will go down, because we will not sell our – we'll not sell our product[s] in a cheap price. There are many cheap product[s] *in China* . . . .

(SAC ¶ 170.) The SAC's challenge to the truthfulness of this statement fails for two reasons. First, the SAC does not explain in any fashion how any portion of this statement was false or misleading.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

16

Second, the SAC does not make a single factual allegation regarding InMode's strategy or pricing in China or outside the United States.[7] The SAC thus gives the Court no basis to determine that Mizrahy's statement was false or misleading. Respectfully, the Court should revisit its earlier decision and dismiss this statement for failure to plead falsity.

The four remaining Pricing Statements were all ***comparative***. That is, each statement either compared InMode's platform pricing to its attachment (consumable) pricing, or compared InMode's pricing model to that of its competitors:

- During the June 4, 2021 Jeffries Healthcare Conference, Malca stated: InMode is "not a razor and razorblade company. When we do have consumables on many of our products, we don't discount our platforms ***just to jack up the price of the consumables***. We set our platform for full price and sell our consumable for very reasonable pricing." (SAC ¶ 176.) Thus, Malca was expressly describing the comparison between platform and consumable pricing.

- During the February 10, 2022 analyst conference call, Mizrahy stated: "But again, I would like to say it again, we are not razor and razorblade company. We do not sell the system for less or would [sic] do not give the system for free, ***just to charge high price for disposable***. We know that ***some companies in the medical esthetic [sic] did in the past and they failed***. And therefore, we charge for the system, and we ***price the disposable*** in a reasonable price in order to encourage doctor [*sic*] to use more and more, and to have more treatment." (SAC ¶ 184.) Here, Mizrahy was describing both comparisons: platform pricing compared to consumable pricing, and InMode's pricing approach compared to the approach "some companies . . . did in the past."

- At the March 15, 2023 Barclays Global Healthcare Conference, Malca stated: "[Physicians] don't like the razor-razorblade model. They tend to forget pretty quickly what they paid for the original device. So, even if you discounted or heavily discounted, ***as many of the companies do*** . . . And ***what we do differently*** is we charge them the full price on the device and ***charge a very reasonable price on the consumable***." (SAC ¶ 191.) Just as with Mizrahy's statement above, Malca was describing both comparisons.

- Finally, at the August 15, 2023 UBS MedTech, Tools and Genomics Summit, Malca stated: "What would he feel more comfortable to recommend, and they tend to forget that for our product platforms, they paid full price, ***and the competitor***, maybe they get a discount because they have the razor blade model.

---

[7] Plaintiffs know that Defendants disputed the falsity of Mizrahy's statement on this basis (*see* Defs.' Mot. to Dismiss ("MTD FAC"; ECF No. 77) at 28–29; Defs.' Reply ("Reply"; ECF No. 83) at 12), but did not add any allegations to the SAC regarding InMode's strategy or pricing in China or outside the United States. Indeed, Plaintiffs did not even attempt to defend this Pricing Statement when Defendants' first motion to dismiss challenged the FAC. (*Id.*)

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

17

So they tend to forget what was the initial cost for them, but they just look at this procedure. And then they don't like the fact they see it like the greedy manufacturer and this is his patient. This is his – he's doing the walk. And then again, ***the manufacturer is coming***, putting his hand into his pocket and like take yourself or sometimes even half of what they're able to charge and physicians don't like it." (SAC ¶ 197.) Here, Malca was again comparing InMode's pricing model to that of its competitors.

Indeed, the Court has recognized that Mizrahy's and Malca's Pricing Statements were comparative. For example, the Court's Order noted that the statements (1) concerned "InMode's competitive edge" that "differentiated InMode from its competitors" (Order at 3); (2) represented that InMode's pricing model is "unlike other companies, thereby giving InMode a competitive edge" (*id.* at 21); and/or (3) represented to investors that InMode does "not use a 'razorblade' model—understood as a model where a platform is sold cheaply and consumable attachments are sold steeply" (*id.*).

The SAC's critical shortcoming is that its allegations—most charitably considered and construed in Plaintiffs' favor—describe ***only*** InMode's pricing and ***only*** for its platforms. The SAC does not make a single allegation to describe InMode's pricing for its consumables or its competitors' pricing model. Absent such allegations, it is impossible for the Court to determine whether Mizrahy and Malca were accurately describing the comparisons.[8]

The law is clear that, when analyzing falsity allegations regarding a comparative statement, it is not sufficient for a plaintiff to rely on factual allegations concerning only one side of the comparison. Indeed, multiple courts have recognized that shareholder plaintiffs fail to plead falsity if the complaint does not make factual allegations about ***both*** sides of the comparison. *See Lamontagne v. Tesla, Inc.*, 2024 WL 4353010, at *11–12 (N.D. Cal. Sept. 30, 2024) (dismissing shareholder action on falsity grounds because "the fact that there were safety issues with the technology" does "not contradict" comparative statements that "Autopilot cut crashes in half or that using it was safer than not using it"), *aff'd sub nom. Oakland Cnty. Voluntary Emps.'*

---

[8] The SAC's loss causation allegations regarding the Pricing Statements suffer from the same problem. The alleged corrective disclosures did not reveal anything about InMode's pricing for its attachments or its competitors' pricing practices. (*See* SAC ¶¶ 6–8, 121–22, 124–25, 136, 150, 153, 204–14.) Those disclosures thus could not have ***revealed*** to investors that the comparisons made in the Pricing Statements were false or misleading.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

18

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

*Beneficiary Ass'n v. Tesla Inc.*, 2025 WL 3459471 (9th Cir. Dec. 2, 2025); *Lloyd v. CVB Fin. Corp.*, 2012 WL 12883522, at \*13, \*22 (C.D. Cal. Jan. 12, 2012) (dismissing shareholder class action on falsity grounds in which "plaintiffs allege that defendants misrepresented the financial health of CVB as compared with other Inland Empire banks," so "the court can appropriately consider information concerning those banks' stock prices in evaluating whether plaintiffs have adequately alleged that defendants' comparative representations were false"), *aff'd*, 811 F.3d 1200 (9th Cir. 2016); *see also In re Gen. Motors Co. Sec. Litig.*, 773 F. Supp. 3d 429, 448 (E.D. Mich. 2025) (dismissing shareholder class action challenging comparative statements on falsity grounds); *City of Hialeah Emps.' Ret. Sys. v. Peloton Interactive, Inc.*, 153 F. 4th 288, 297–98 (2d Cir. 2025) (same); *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 646, 651–52 (N.D. Ill. 2020) (same), *aff'd sub nom. Nat'l Elevator Indus. Pension Fund v. Conagra Brands, Inc.*, 2022 WL 1449184 (7th Cir. May 9, 2022).

For example, in the recent *General Motors* case, the plaintiff challenged the defendants' "statements that Cruise AVs were 'safer than a human driver.'" 773 F. Supp. 3d at 448. The court dismissed the Section 10(b) claim directed at those statements, for failure to plead falsity. The court noted that the complaint made factual allegations about the Cruise AVs' safety record, but failed to make any factual allegations to describe human drivers' safety record. *Id*. The court thus held that it had no basis to assess the accuracy of statements about the safety records of Cruise AVs as to compared to human drivers. *Id*. ("[T]he complaint contain[ed] no allegations allowing a comparison of the driving behavior and driving results between Cruise AVs and human drivers."). Without such "comparable allegations," the Court could "only speculate from the alleged facts about whether Cruise AVs were safer than human drivers based on driving behavior and results." *Id.* (collecting cases).

So too here. The SAC challenges comparisons between InMode's platform pricing and attachment pricing, and comparisons between InMode's pricing and its competitors' pricing. As in *General Motors*, the SAC makes allegations about InMode's pricing approach—namely, about its platform prices and that the Company sometimes discounts its platforms—but makes no allegations about the attachments' prices or competitors' pricing approach. As a result, the Court

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

may only speculate about whether Defendants' comparative statements were true or false. "The Court need not and should not engage in such speculation." *Id.* Plaintiffs have thus failed to carry their burden to sufficiently plead falsity regarding the comparative Pricing Statements.

Finally, the "flimsy evidence of falsity necessarily undermines the ability to show scienter." *Sneed*, 147 F.4th at 1127. The Court held that the FAC adequately alleged that Mizrahy and Malca were "aware of the significant discounts." (Order at 21.) But knowledge that discounting was occurring is insufficient to allege scienter for the comparative Pricing Statements. The SAC must also allege, for example, that Mizrahy and Malca knew that InMode was "jack[ing] up the price of the consumables," contrary to their representation that InMode does not do so. But the SAC does not even allege that InMode was actually "jack[ing] up the price of the consumables," much less that Mizrahy and Malca knew that. Similarly, the SAC must allege that Mizrahy and Malca knew that InMode's pricing practices were the same as its competitors, contrary to their representation that InMode pursued a different approach. But the SAC does not even allege that competitors' practices were similar to InMode's, much less facts from which the Court can infer that Mizrahy and Malca knew as much.

Finally, and more broadly, the SAC does not make any factual allegations—much less the particularized allegations the PSLRA requires—to show that Mizrahy or Malca intended by their Pricing Statements to mislead investors. The more compelling and cogent explanation is that Mizrahy and Malca intended to convey accurate comparisons about InMode's platform pricing compared to its consumable pricing, and InMode's pricing model compared to its competitors' models. *See Lamontagne*, 2024 WL 4353010, at *12–14.

For all of these reasons, the Court can and should take a closer look at the SAC's allegations, and should hold that they do not plead falsity or scienter for the Pricing Statements.

## III.   The SAC Violates The Court's Order, Which Dismissed Ten Safety Statements "Without Leave To Amend."

Apart from the SAC's pleading deficiencies, the SAC violates the Court's Order. The Court granted Defendants' first motion to dismiss on falsity grounds for ten Safety Statements "without leave to amend." (Order at 29–31, 33.) In clear violation of that Order, Plaintiffs added allegations

to try to again attack the falsity of those same ten Safety Statements. (Redline at 31–33, 35, 40–49, 72–77, 81–82, 84–86, 89; SAC ¶¶ 82–85, 88–89, 101–09, 162, 164–65, 167–68, 172–74, 182, 186, 193–96, 204.) Those allegations should be stricken.

The SAC also adds another sentence to its challenge to the August 5, 2020 earnings call in which Lakhani states that "Evoke was – it's one of a kind, there's nothing really else out there for it, and there are some people that want to handle that lower 1/3 of the face." (Redline at 74–75; SAC ¶ 168.) The Court should reaffirm that it dismissed this statement without leave to amend, and strike and disregard the other improper new allegations in the SAC. Even if the Court considers this improper new statement (which it should not), it should still dismiss it because Lakhani's statements that Evolve is "one of a kind" and "there's nothing really else out there," and his speculation about what "some people" want, are inactionable puffery. (*See* Order at 17, 29–31.)

## IV.   The SAC Fails To Adequately Plead Claims Against The Individual Defendants.

Section 20(a) of the Securities Exchange Act "establishes that 'every person who, directly or indirectly, controls any person liable under [the Securities Exchange Act and its implementing regulations] shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable.'" *Webb v. SolarCity Corp.*, 884 F.3d 844, 858 (9th Cir. 2018) (quoting 15 U.S.C. § 78t(a)). "A plaintiff suing under § 20(a) must demonstrate: (1) a primary violation of federal securities laws and (2) that the defendant exercised actual power or control over the primary violator." *Id.* "Plaintiffs must plead the circumstances of the control relationship with sufficient particularity." *In re Peregrine Sys., Inc. Sec. Litig.*, 2005 WL 8158825, at *74 (S.D. Cal. Mar. 30, 2005) (collecting cases), *aff'd*, 310 F. App'x 149 (9th Cir. 2009). "[M]ere titles," "status," or "position" as an officer or director are "insufficient to presume or warrant a finding of power to control or influence." *Id.* Likewise, "boilerplate allegation[s]" regarding "high-level positions" or "participation in and/or awareness of the Company's operations" are not sufficient to plead a control person claim, because "even the CEO is not automatically a 'controlling person' under Section 20(a)." *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1163 (C.D. Cal. 2007) (citing *Paracor Fin. Inc. v. GE Cap. Corp.*, 96 F.3d 1151, 1163 (9th Cir. 1996)). "Rather, Plaintiffs must show that Defendants were active in

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

the day-to-day affairs of [the Company] or that they exercised specific control over the preparation and release of the [challenged] statements." *Peregrine*, 2005 WL 8158825, at *74 (dismissing control person claims).

Here, the SAC asserts direct liability claims against the Individual Defendants under Section 10(b), as well as secondary liability claims against the Individual Defendants as "controlling persons" under Section 20(a). (SAC ¶¶ 231–45.) The SAC, however, fails to state claims against Theodorou, Kreindel and Lakhani for the following reasons.

**Theodorou and Kreindel.** As discussed above, the SAC fails to adequately plead loss causation for the Marketing and Safety Statements. (*See supra* Section I.) The Section 10(b) claims against Theodorou and Kreindel as to those statements should therefore be dismissed. The Section 20(a) claims against them as to those statements must also be dismissed for failure to plead "a primary violation of federal securities laws." *Webb*, 884 F.3d at 858.

The Section 10(b) claims against Theodorou and Kreindel as to the Pricing Statements should be dismissed for two reasons. First, as discussed above, the SAC fails to plead falsity or scienter for those statements. Second, even if the Pricing Statements survive dismissal, they were all made by Mizrahy or Malca—none were made by Theodorou or Kreindel. (*See supra* Section II.) Because they were not the "makers" of any of the Pricing Statements, Supreme Court precedent dictates that they cannot be held liable under Section 10(b) for those statements. (*See* Order at 23); *Janus*, 564 U.S. at 142.

They also cannot be held secondarily liable under Section 20(a) as "control persons" for the Pricing Statements, because "Theodorou and Kreindel clearly do not meet the requirements for control liability with respect to the pricing model statements." (Order at 23.) The Court previously dismissed the Section 20(a) claims against Theodorou and Kreindel with leave to amend "because it appears Plaintiffs may be able to cure the defects noted concerning their control over pricing." (Order at 32.) Critically, though, Plaintiffs did not even attempt in the SAC to cure the defects. The Court should therefore again dismiss all claims against Theodorou and Kreindel, this time without leave to amend.

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

**Lakhani.** The Section 10(b) claim against Lakhani as to the Marketing and Safety Statements should be dismissed because, again, the SAC does not plead loss causation for those statements. The Section 20(a) claim against Lakhani as to those statements must also be dismissed, for failure to plead "a primary violation of federal securities laws." *Webb*, 884 F.3d at 858.

The Section 10(b) and Section 20(a) claims against Lakhani as to the Pricing Statements should be dismissed for all of the same reasons that such claims should be dismissed against Theodorou and Kreindel: the SAC fails to plead falsity or scienter for those statements, Lakhani was not the "maker" of any of those statements, and Lakhani does not meet the requirements for control person liability with respect to the Pricing Statements.

Defendants acknowledge that the Court previously held that, "[g]iven the allegations regarding Lakhani's control over the pricing discounts, the Court finds that the Plaintiffs have properly pleaded his control liability with respect to these statements." (Order at 23.) Respectfully, the Court should revisit this holding. The fact is that the SAC does not make *any* specific "allegations regarding Lakhani's control over the pricing discounts" (Order at 23), so the Court cannot conclude that Lakhani had any such control, *see Peregrine*, 2005 WL 8158825, at *74 (dismissing control person claims against outside directors because "there are no particularized allegations that they were [] active in day-to-day affairs" of the company); *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1081 (N.D. Cal. 2010) (control person claims against outside directors would "fail because plaintiffs fail to plead specific facts establishing that these persons exercised a 'significant degree of day to day operational control' over the company, as the law requires."). The SAC offers only (1) that Lakhani's title was "President of InMode's North America division" (SAC ¶ 21); (2) vague allegations about reporting lines and speculation by low-level confidential witnesses (*id.* ¶¶ 27–28, 35, 45, 50, 57–58, 61, 63–65); and (3) fact-free boilerplate allegations, grouping all of the Individual Defendants without differentiation, to baldly claim that "the Individual Defendants directed involvement in the day-to-day operations of InMode," "conducted and participated, directly and indirectly, in the conduct of InMode's business affairs," "had the ability to prevent the issuance of the statement or cause the statements to be corrected," and "[b]y virtue of their positions of control and authority as senior officers and/or

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

directors, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of InMode, including the contents of public statements during the Class Period" (*id*. ¶¶ 241–43). Critically, the SAC does not actually make a single factual allegation to show that Lakhani had "control over the pricing discounts" (Order at 23), or that he "participat[ed] in the day-to-day affairs" of InMode's pricing practices, *Peregrine*, 2005 WL 8158825, at *74 (dismissing nearly identical "conclusory allegations" of control "by 'virtue of their executive positions, Board membership, and stock ownership and that these Defendants had the power to influence and control (and did influence and control, directly or indirectly) the decision-making of [the Company], including the content and dissemination'"); *see also Hansen*, 527 F. Supp. 2d at 1163 (same).

Even if the SAC made such allegations (it does not), this does not demonstrate that Lakhani was a control person **with respect to the Pricing Statements** at issue in this case. Indeed, the SAC does not even attempt to allege that Lakhani had any role whatsoever with respect to the Pricing Statements, much less that he had control over those statements. *See Peregrine*, 2005 WL 8158825, at *74 (dismissing control person claim because there were not "sufficient allegations to show that these Defendants were in any way involved in the alleged misleading press releases other than that they read and approved them"); *Hansen*, 527 F. Supp. 2d at 1163 (allegations that individual defendants held "high-level positions . . . ownership and contractual rights" and participated in "operations and/or [had] intimate knowledge of the false financial statements" insufficient to plead control under Section 20(a)). Nor could the SAC make such allegations, because all of the Pricing Statements (SAC ¶¶ 170, 176, 184, 191, 197) were made orally by Mizrahy or Malca. *See In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1242–43 (N.D. Cal. 1994) (dismissing Section 20(a) claims against certain defendants because they cannot "be held liable for oral statements attributable to identified individuals," because "under a theory of control person liability . . . statements attributable to specific individuals are presumed to be the actions of those individuals only" and are "not actionable against other defendants under any theory of liability")). There thus can be no allegation that Lakhani participated in any way in the preparation or making of the Pricing Statements, and the Section 20(a) claim against him should be dismissed.

For all of these reasons, the Court should also dismiss all claims against Theodorou, Kreindel, and Lakhani.

### V.   The SAC Should Be Dismissed Without Leave To Amend.

Plaintiffs have now "been granted two chances to amend but still fail[] to state a claim." *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 542 (9th Cir. 2024) (affirming "dismissing the second amended complaint without leave to amend" in shareholder class action). "As here, where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (affirming "dismiss[ing] the SAC with prejudice, since it was clear that the plaintiffs had made their best case and had been found wanting"). Continuing to permit Plaintiffs to amend would cause "undue prejudice to the opposing party by virtue of allowance of the amendment" and, in any event, "would be futile." *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

As to the Marketing and Safety Statements, the SAC alleges the exact same corrective disclosures as in the FAC. Nothing Plaintiffs can plead will change the substance of those disclosures, which the Court has previously found did not cause investors' losses. Accordingly, Plaintiffs will never be able to adequately plead loss causation for the Marketing and Safety Statements, no matter how many times Plaintiffs may attempt to amend their complaint.

As to the Pricing Statements, the SAC alleges the exact same challenged statements as in the FAC. Nothing Plaintiffs can plead will change those statements, and Plaintiffs have not identified any facts suggesting that Mizrahy's and Malca's comparisons were inaccurate or were intended to mislead investors.

For these reasons, the Court should deny Plaintiffs leave to amend.

### CONCLUSION

For all of the above reasons, Defendants respectfully request that the Court dismiss Plaintiffs' Second Amended Complaint in its entirety, this time with prejudice.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

**WILLKIE FARR & GALLAGHER LLP**
2029 CENTURY PARK EAST, SUITE 2900
LOS ANGELES, CA 90067
310-855-3000

Date: December 5, 2025

**WILLKIE FARR & GALLAGHER LLP**

By:   */s/ Glenn K. Vanzura*
      Glenn K. Vanzura

Glenn K. Vanzura (SBN 238057)
GVanzura@willkie.com
Arev H. Hovsepian (SBN 348222)
AHovsepian@willkie.com
Zoe R. Goldberg (SBN 353799)
ZGoldberg@willkie.com
2029 Century Park East, Suite 2900
Los Angeles, CA 90067-2905
Telephone:    (310) 855-3000

Joshua S. Levy (*Admitted Pro Hac Vice*)
JLevy@willkie.com
1875 K Street, N.W.
Washington, D.C. 20006
Telephone:    (202) 303-1000

*Attorneys for Defendants*
*InMode Ltd., Moshe Mizrahy,*
*Yair Malca, Shakil Lakhani,*
*Spero Theodorou, and Michael Kreindel*

DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT