POMERANTZ LLP
Jeremy A. Lieberman (admitted *pro hac vice*)
Emma Gilmore (admitted *pro hac vice*)
Villi Shteyn (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
egilmore@pomlaw.com
vshteyn@pomlaw.com

*Counsel for Plaintiffs and for the Proposed Class*

*[Additional Counsel on Signature Page]*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| IN RE INMODE LTD. SECURITIES LITIGATION<br><br><br>THIS DOCUMENT RELATES TO:<br>ALL  ACTIONS | Case No. 2:24-cv-01219-MEMF-MRW<br><br>CLASS ACTION |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT- 2:24-CV-01219-MEMF-MRW

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ........................................................................................ 1

II.  LEGAL STANDARD.................................................................................................... 3

III. ARGUMENT ............................................................................................................. 4

    1.   The SAC Pleads Loss Causation Associated With the Revised Revenue Guidance ........ 4

    2.   Defendants Rehash Arguments Already Rejected by the Court ..................................... 11

    3.   The SAC Adequately Pleads Claims Against the Individual Defendants...................... 17

IV.  CONCLUSION......................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdo v. Fitzsimmons*,
  2018 WL 11220494 (N.D. Cal. May 22, 2018) ................................................................................18

*Arizona v. California*,
  460 U.S. 605 (1983)..........................................................................................................................12

*Askins v. U.S. Dep't of Homeland Sec.*,
  899 F.3d 1035 (9th Cir. 2018) .....................................................................................................12, 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................................................4, 5

*Cement Masons & Plasterers Loc. No. 502 Pension Fund v. InMode Ltd.*,
  2025 WL 2658224 (C.D. Cal. Sep. 12, 2025)........................................................................... *passim*

*Christianson v. Colt Indus. Operating Corp.*,
  486 U.S. 800 (1988).........................................................................................................................12

*Dura Pharms, Inc. v. Broudo*,
  544 U.S. 336 (2005)............................................................................................................................4

*Garbaccio v. Starbucks Corp.*,
  2025 WL 3496252 (W.D. Wash. Dec. 5, 2025) ...............................................................................15

*Garbaccio v. Starbucks Corp.*,
  2025 WL 3611558 (W.D. Wash. Dec. 12, 2025) .............................................................................10

*Glazing Emps. & Glaziers Union Loc. #27 Pension & Ret. Fund v. iRhythm Techs., Inc.*,
  2025 WL 3128193 (N.D. Cal. Nov. 7, 2025) .......................................................................12, 13, 14

*Gonsalves v. Block, Inc.*,
  2026 WL 42657 (N.D. Cal. Jan. 6, 2026) .........................................................................................18

*Grausz v. Hershey Co.*,
  2024 WL 3836100 (S.D. Cal. Aug. 15, 2024) .............................................................................13, 14

*Hefler v. Wells Fargo & Co.*,
  2018 WL 1070116 (N.D. Cal. Feb. 27, 2018) ...................................................................................18

*Howard v. Everex Sys., Inc.*,
   228 F.3d 1057 (9th Cir. 2000) .....................................................................................................17, 18

*In re BofI Holding, Inc. Sec. Litig.*,
   977 F.3d 781 (9th Cir. 2020) ........................................................................................4

*In re Daou Sys., Inc.*,
   411 F.3d 1006 (9th Cir. 2005), *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) ...............................................................6, 9

*In re Gen. Motors Co. Sec. Litig.*,
   773 F. Supp. 3d 429 (E.D. Mich. 2025)........................................................................16

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
   763 F. Supp. 3d 1027 (C.D. Cal. 2025) ....................................................................6, 7

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) .........................................................................4, 8, 9, 11

*In re Gupta Corp. Sec. Litig.*,
   900 F. Supp. 1217 (N.D. Cal. 1994) ...........................................................................18

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ........................................................................................4

*Kona Enters., Inc. v. Est. of Bishop*,
   229 F.3d 877 (9th Cir. 2000) ......................................................................................14

*Lamontagne v. Tesla, Inc.*,
   2024 WL 4353010 (N.D. Cal. Sep. 30, 2024) .............................................................16

*Lloyd v. CVB Fin. Corp.*,
   2012 WL 12883522 (C.D. Cal. Jan. 12, 2012) ............................................................16

*Lloyd v. CVB Fin. Corp.*,
   811 F.3d 1200 (9th Cir. 2016) .....................................................................................16

*Loos v. Immersion Corp.*,
   762 F.3d 887 (9th Cir. 2014) .....................................................................................6, 7

*Merritt v. Barclays PLC*,
   2025 WL 1906688 (C.D. Cal. July 10, 2025).................................................................5

*Mineworkers' Pension Scheme v. First Solar Inc.*,
   881 F.3d 750 (9th Cir. 2018) ............................................................................... *passim*

*N.Y. Hotel Trades Council & Hotel Ass'n of N.Y.C., Inc. Pension Fund v. Impax Lab'ys Inc.*,
   2019 WL 3779262 (N.D. Cal. Aug. 12, 2019) ...............................................................7

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE  SECOND AMENDED COMPLAINT - 2:24-CV-01219-MEMF-MRW

*N.Y. Hotel Trades Council & Hotel Ass'n of N.Y.C., Inc. Pension Fund v. Impax Lab'ys, Inc.*,
    843 F. App'x 27 (9th Cir. 2021) ..................................................................................7, 10

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda*,
    730 F.3d 1111 (9th Cir. 2013) ............................................................................................5

*Perez v. Wells Fargo & Co.*,
    75 F. Supp. 3d 1184 (N.D. Cal. 2014) ..............................................................................12

*Ret. Sys. v. Peloton Interactive*,
    153 F.4th 288 (2d Cir. 2025) ............................................................................................16

*Sivakova v. American Honda Motor Co.*,
    2025 WL 2324632 (C.D. Cal. July 17, 2025).....................................................................13

*Smilovits v. First Solar Inc.*,
    119 F. Supp. 3d 978 (D. Az. 2015) ............................................................................5, 6, 11

*Sneed v. Talphera, Inc.*,
    147 F.4th 1123 (9th Cir. 2025) .........................................................................................15

*Strigliabotti v. Franklin Res., Inc.*,
    398 F. Supp. 2d 1094 (N.D. Cal. 2005) ............................................................................12

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007).............................................................................................................3

*United States v. Gartenlaub*,
    2024 WL 4987258 (9th Cir. Dec. 5, 2024) ..................................................................11, 15

*United States v. Lacey*,
    2023 WL 3750776 (D. Ariz. June 1, 2023) ......................................................................13

*W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
    495 F. Supp. 3d 622 (E.D. Ill. 2020)................................................................................16

**Statutes**

15 U.S.C. § 78j(b).......................................................................................................................19

15 U.S.C. § 78t(a) ......................................................................................................................18

## I.    PRELIMINARY STATEMENT

The Court already upheld several securities fraud claims against several named defendants and granted Plaintiffs leave to file a second amended complaint ("SAC")[1] to address certain perceived deficiencies in the first amended complaint (Dkt. No. 64) ("FAC"). The SAC pleads a straightforward case of securities fraud. It centers on material misrepresentations that Defendants peppered on the market regarding the price at which InMode, a producer of medical equipment purporting to offer body sculpting and other rejuvenation procedures, sold its devices, as well as its compliance with U.S. Food and Drug Administration ("FDA") regulations. Specifically, despite representing the opposite to investors ("what we do differently [from competitors] is we charge **the full price** on the device"), during the Class Period, InMode heavily discounted almost every device it sold. This practice, known to Defendants but concealed from investors, threatened InMode's future revenues.

Moreover, unbeknownst to investors, Defendants repeatedly promoted InMode's products for off-label uses not approved by the FDA, despite publicly representing that "[w]e have obtained FDA clearance for the current treatments for which we offer our products." Defendants' promotion of its Morpheus8V device for the treatment of intravaginal remodeling and urinary retention was all the more brazen, as InMode had already been criticized by the FDA for falsely promoting these or similar uses as FDA-approved for a precursor device. Those uses posed serious risks of harm to women. Undeterred, Defendants continued their chicanery by encouraging off-label uses. For example, at a Company sales event attended by Defendant Mizrahy, Defendant Theodorou internally described the Morpheus8V device as a "Trojan Horse" of revenues to be exploited as OBGYN's "literally have the woman in stirrups. They are a captive audience."

When the market finally learned the truth, InMode's shares plummeted, causing investors hundreds of millions in damages. Meanwhile, during the Class Period, the Individual Defendants enriched themselves by dumping large portions of their holdings at prices artificially inflated by

---

[1] All ¶__ references are to the SAC (Dkt. No. 93). "Defs' Br." references are to the Defendants' Motion to Dismiss, filed on December 5, 2025 (Dkt. No. 97). All emphasis is added unless otherwise noted.

their misrepresentations, collectively pocketing **over $770 million**.

In its opinion denying in part Defendants' motion to dismiss the FAC, the Court found that "Plaintiffs have properly pleaded falsity, scienter, and loss causation with respect to the alleged statements about InMode's pricing model," thus stating a securities fraud claim against Defendants Mizrahy (InMode's Chief Executive Officer) and Malca (InMode's Chief Financial Officer), and therefore InMode. *See* Dkt. No. 91, *Cement Masons & Plasterers Loc. No. 502 Pension Fund v. InMode Ltd.*, 2025 WL 2658224, at *12 (C.D. Cal. Sep. 12, 2025) ("Opinion"). The Court also held that Plaintiffs properly pleaded control person allegations against Defendant Lakhani, the President of InMode's North America division. *Id*. at *14.

Next, the Court found that "Plaintiffs have properly pleaded falsity and scienter but not loss causation with respect to InMode's statements regarding FDA Clearance." *Id*. at *14.

Finally, the Court concluded that "Plaintiffs have properly pleaded that some . . . of the statements concerning safety and efficacy are material misrepresentations," such as the statements regarding "the use of Morpheus8V for intravaginal remodeling, vaginal lubrication, and urinary incontinence" (Statements 19-20) and a statement "regarding the launch of the Empower platform[,] on which the Morpheus8V was placed." (Statement 14). *Id*. at *15, *17-18. As Plaintiffs pleaded and the Court agreed, the safety and efficacy statements were properly alleged to be false and misleading when made because, *inter alia*, "they omit that the products do not have FDA clearance for the uses discussed." *Id*. at *15. The Court also held that "scienter is properly pleaded with respect to th[ose] misleading statements," but concluded that "[l]oss causation is not shown through corrective disclosures." *Id.* at *19.

The Court granted Plaintiffs leave to amend with respect to the claims concerning the FDA clearance statements, and with respect to the claims concerning the safety and efficacy statements outlined above. Because the SAC properly pleads loss causation under a proximate cause theory

expressly approved by the Ninth Circuit, those claims should now be sustained. *Id*. at *20.[2]

Defendants make several arguments seeking dismissal of *all* claims, none of which have merit. *First,* Defendants simply rehash arguments that were raised in their motion to dismiss, briefed by the parties, vetted at oral argument, and considered and rejected by the Court. Accordingly, Defendants' motion is foreclosed by the law of the case doctrine. Under well-established precedent, the law of the case doctrine strongly militates against disturbing the Court's Opinion for *any* of the sustained claims absent Defendants' demonstration of extraordinary circumstances, such as a substantive change in the law or clear error by the Court. Here, Defendants do not point to any change in the relevant law, or even begin to carry their heavy burden to show clear error in the Court's well-reasoned decision on those points. At bottom, Defendants simply do not like certain aspects of the Court's Opinion, and their motion is nothing more than an untimely and improper request for reconsideration to avoid large shareholder damage claims for their violations of the federal securities laws. Defendants' dissatisfaction with the outcome, however, provides no basis for reversing the Court's prior decision.

*Second,* even if the Court were inclined to entertain Defendants' motion (which it should not), accepting the factual allegations of the SAC as true and construing all inferences in Plaintiffs' favor, there is absolutely no basis to depart from the Court's earlier ruling sustaining the claims based on the pricing statements.[3]

## II. LEGAL STANDARD

On a Rule 12(b)(6) motion, a court must "accept all factual allegations . . . as true" and construe those allegations in the light most favorable to plaintiff. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322-23 (2007). A complaint "does not need detailed factual allegations" or "evidence;" it need only allege "enough facts to state a claim to relief that is plausible on its face."

[2] While Plaintiffs previously pled a materialization of risk theory (which this Court noted was never expressly adopted by the Ninth Circuit), the SAC now pleads a proximate cause theory that was expressly endorsed by the Ninth Circuit.

[3] Given the Court's Opinion, for purposes of the current motion, Plaintiffs are not pursuing the statements dismissed with prejudice.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE  SECOND AMENDED COMPLAINT - 2:24-CV-01219-MEMF-MRW

3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "Dismissal is appropriate only where the complaint lacks . . . sufficient facts to support a cognizable legal theory." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation modified). Contrary to Defendants' contention (Defs' Br. at 7), the Court applied the correct standard in assessing Plaintiffs' claims.

### III.    ARGUMENT

#### 1.    The SAC Pleads Loss Causation Associated With the Revised Revenue Guidance

"Loss causation" refers to the "causal connection between the material misrepresentation and the loss." *Dura Pharms, Inc. v. Broudo*, 544 U.S. 336, 342 (2005). To plead loss causation, Plaintiffs need only "provide enough factual content to give the defendant 'some indication of the loss and the causal connection that the plaintiff has in mind,'" which "should not prove burdensome." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 794 (9th Cir. 2020) (quoting *Dura*, 544 U.S. at 347). The Ninth Circuit explicitly permits Plaintiffs to plead loss causation under a "proximate cause" theory, such as a stock drop following an earnings miss or revised financial guidance. *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 752-53 (9th Cir. 2018) ("*First Solar*"). The SAC now pleads two drops in InMode's stock price under this precise proximate cause theory. The complaint alleges that InMode lowered its revenue guidance on October 12, 2023, as well as on December 6, 2023. ¶¶208, 213. The revised revenue guidance was a foreseeable consequence of Defendants' undisclosed practice of heavily discounting its systems and its inability to continue marketing several of its products in North America for off-label purposes. ¶¶211, 214.

The Ninth Circuit has taken a flexible approach to loss causation that recognizes there are an "infinite variety of ways for a tort to cause a loss." *First Solar*, 881 F.3d at 753 (citation modified). "To prove loss causation, plaintiffs need only show a 'causal connection' between the fraud and the loss by tracing the loss back to 'the very facts about which the defendant lied.'" *Id.* (citation omitted). The requirement "'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' loss causation." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049,

1057 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555). The inquiry is one of plausibility. "So long as the complaint alleges facts that, if taken as true, plausibly establish loss causation, a Rule 12(b)(6) dismissal is inappropriate." *Id.*; *accord*, *Merritt v. Barclays PLC*, 2025 WL 1906688, at *10 n.10 (C.D. Cal. July 10, 2025) (Frimpong, J.) ("While the Court acknowledges that the heightened requirements apply to the *particularity* of the allegations, the Court finds no support that a plaintiff must plead something beyond plausibility when it comes to the rationale of the causal link."). "Disclosure of the fraud is not a sine qua non of loss causation, which may be shown even where the alleged fraud is not necessarily revealed prior to the economic loss." *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1120 (9th Cir. 2013).

In the seminal case *First Solar*, the Ninth Circuit clarified the test for loss causation. It held that a revelation of the actual fraud or of the improper practices at issue is ***not*** required for loss causation. 881 F.3d at 754.[4] Instead, "[a] plaintiff may also prove loss causation ***by showing that the stock price fell upon the revelation of an earnings miss*** [or revised revenue guidance], even if the market was unaware at the time that fraud had concealed the miss." *Id*. "This rule makes sense because it is the underlying facts concealed by fraud that affect the stock price . . . [f]raud simply causes a delay in the revelation of those facts." *Id*. "The 'ultimate issue' under either theory 'is whether the defendant's misstatement, as opposed to some other fact, foreseeably caused the plaintiff's loss.'" *Id*. (citation omitted). To be clear, *First Solar* was decided after summary judgment with extensive discovery and evidence. *Id*. at 752. Even at the evidentiary stage, several loss causation events upheld in *First Solar* were disclosures of financial misses ***without any additional disclosure of information*** about practices or alleged fraud. *Smilovits v. First Solar Inc.*, 119 F. Supp. 3d 978, 996 (D. Az. 2015). The Ninth Circuit affirmed, holding that "the district court applied the correct test" in concluding that sufficient evidence permitted the issue of loss causation to reach the jury based on revised revenue guidance and earnings misses. *First Solar*, 881 F.3d at 754.

---

[4] This Court did not address *First Solar* and its import in its Opinion.

The district court explained that, *in discovery*, "Plaintiffs have identified evidence supporting their claim that the facts allegedly misrepresented and omitted by Defendants affected the company's financial health and caused Plaintiffs' losses." *Smilovits*, 119 F. Supp. 3d at 993. Plaintiffs relied heavily on their expert, who presented sufficient evidence to show that "the very facts [defendants] allegedly fraudulently concealed—the scope of the [manufacturing] defect and its resulting financial impact—were substantial factors in causing [plaintiffs'] loss." *Id*. at 994-96, 998-1001.

Notably, plaintiffs' expert opined that the undisclosed problems with defendants' products, such as heat degradation, negatively impacted First Solar's revised guidance, contributing to the stock price decline. *Id*. at 996. The expert also *explained the lack of analyst commentary linking the heat degradation issue with the revised guidance at the time it was announced*:

> [Internally,] "First Solar's guidance had accounted for some impact due to the heat degradation issue, *but this fact was not disclosed in the financial statements.* Unbeknownst to investors, First Solar's 2011 guidance now incorporated some impact from the heat degradation problem. . . . *Because the heat degradation issue was not specifically discussed, or otherwise disclosed or broken out, none of the analysts had an opportunity to comment on the issue in subsequent analyst reports*.

*Id*. (citation modified). In light of Plaintiffs' expert's analysis linking the stock drop to some of the undisclosed issues, the district court concluded that "this evidence, if accepted by a jury, could satisfy the *Daou* loss causation test." *Id*. at 993.

Defendants argue that the revised revenue guidance must expressly be linked at the time it is made with InMode's pricing and marketing practices (Defs' Br. at 11), but clearly that is not the law as set forth definitively in *First Solar* and its progeny. Defendants' cited case, *In re Genius Brands Int'l, Inc. Sec. Litig.*, 763 F. Supp. 3d 1027 (C.D. Cal. 2025) ("*Genius Brands III*") is inapt. There, plaintiffs attempted to plead loss causation only on a "corrective disclosure" theory. *Id*. at 1040-43. As *First Solar* explains, "when plaintiffs plead a causation theory based on market revelation of the fraud, this court naturally evaluates whether plaintiffs have pleaded or proved the facts relevant to their theory." 881 F.3d at 754. Indeed, the district court in *Genius Brands III* invoked *Loos v. Immersion Corp.*, 762 F.3d 887 (9th Cir. 2014) to require plaintiffs to "plausibly

allege that 'the decline in Genius's stock price was proximately caused *by a revelation of fraudulent activity*.'" *Genius Brands III*, 763 F. Supp. 3d at 1042-43 (citation omitted). Since *Loos*, the Ninth Circuit made clear that disclosure of the fraudulent activity is not required, explaining that cases such as *Loos* "should be understood as fact-specific variants of the basic proximate cause test," as "[r]evelation of fraud in the marketplace is simply one of the 'infinite variety' of causation theories a plaintiff might allege." *First Solar*, 881 F.3d at 753-54.

More recently, the Ninth Circuit reaffirmed *First Solar*'s application of the proximate cause theory in *N.Y. Hotel Trades Council & Hotel Ass'n of N.Y.C., Inc. Pension Fund v. Impax Lab'ys, Inc.*, 843 F. App'x 27 (9th Cir. 2021) ("*Impax II*"). There, the Ninth Circuit applied *First Solar* to reverse the district court's erroneous ruling that plaintiffs failed to allege loss causation on their price-fixing theory on the basis that plaintiffs failed to attribute the "earnings misses" to the price-fixing strategy. *Id*. at 30-31. The district court had incorrectly held that loss causation was not sufficiently pled because, "[a]s alleged, the negative market reaction [to the earnings miss] here merely reflects reported financial losses relating to the entrance of new market competitors," not price fixing. *N.Y. Hotel Trades Council & Hotel Ass'n of N.Y.C., Inc. Pension Fund v. Impax Lab'ys Inc.*, 2019 WL 3779262, at *2 (N.D. Cal. Aug. 12, 2019).

Reversing dismissal, the Ninth Circuit held that loss causation was adequately pled ***even when the defendants publicly attributed the earnings miss to factors other than*** the misconduct alleged by the plaintiffs. *Impax II*, 843 F. App'x at 31. The *Impax* complaint "alleged that although defendants attributed May and August 2015 earnings misses to 'the impact of additional competition on generic digoxin, defendants' decreased gross margins and earnings misses were actually due to Impax's concession of market share pursuant to the price-fixing conspiracy's 'rules of the road.'" *Id*. The Ninth Circuit held that "[t]hese allegations suffice to 'trace the loss back to the very facts about which the defendant lied;' i.e., the anti-competitive market and price-fixing scheme." *Id*. (quoting *First Solar*, 881 F.3d at 753). Thus, "[t]he district court erred by ruling plaintiffs did not allege causation for the losses following these earnings announcements." *Id*.

The Ninth Circuit's decision in *Gilead* is also illustrative. There, in August 2003, the FDA publicized a letter it sent to Gilead stating that one of Gilead's sales representatives "made oral statements that minimized the risk information and broadened the indication for [the company's drug]." *Gilead*, 536 F.3d at 1052-53. The letter also expressed the "significant public health and safety concerns raised by these repetitive promotional activities . . . " *Id*. at 1053. The publication of this letter had no negative impact on Gilead's stock price. *Id*. The Ninth Circuit explained that "Gilead's shareholders and the investing public did not find it very significant, though, because they failed to appreciate the extent of Gilead's off-label marketing, and thus could not foresee the letter's impact on [the] sales." *Id*. Gilead's stock price did not drop until October 2003, following a press release revealing third quarter financial results and "*less-than-expected revenues*." *Id*. at 1054, 1058. "The public learned that [the] sales fell significantly below expectations because there had been substantially more overstocking by wholesalers than previously reported." *Id*. at 1054. "Market analysts attributed the disappointing sales to 'lower end-user demand.'" *Id*. Plaintiffs alleged that "[a]t all relevant times, the material misrepresentations . . . directly or proximately caused or were a substantial contributing cause of the damages sustained by [the investors]. . ." *Id*.

The Ninth Circuit found that loss causation was sufficiently pled. It reversed the district court's conclusion that "the complaint failed to connect the . . . chain of events." *Id*. at 1054, 1058. With respect to the letter's impact on sales, the district court erroneously found "a slowing increase in demand, alone, too speculative to adequately demonstrate loss causation." *Id*. at 1057. Rejecting the district court's reasoning, the Ninth Circuit underscored that "so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected on evidentiary grounds." *Id*. at 1057. The Court explained that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. Indeed, "loss causation becomes most critical at the proof stage." *Id*. (citations omitted).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE  SECOND AMENDED COMPLAINT - 2:24-CV-01219-MEMF-MRW

Here, Plaintiffs plead loss causation the same way as the Ninth Circuit expressly permits it. The SAC alleges that the revised revenue guidance was caused at least in part by InMode's alleged practices of discounting and unauthorized marketing for unapproved uses of its products.[5] *First*, with respect to the October 12, 2023 significant stock drop associated with the news revealed that day, the SAC alleges **two interrelated disclosures**: (i) that the *Capitol Forum* published an investigative report titled "*InMode: Pricing Flexibility of Products Raises Questions Regarding Statements to Investors and Margin Consistency*," revealing that, unbeknownst to investors, InMode significantly discounts the prices of its devices on a routine basis (¶¶209-10, 212); and (ii) that InMode reduced its revenue guidance, publicly blaming the reduction on constraints in financing of medical equipment, marked by higher interest rates, tighter leasing approval standards, and bottlenecks in loan processing (¶¶208, 210-11, 212). On this interrelated news, InMode's stock price plummeted nearly 26%. ¶212.

This Court correctly held that Plaintiffs sufficiently pled loss causation associated with the publication of the *Capitol Forum* report revealing InMode's practice of heavy discounting, and the attendant 26% stock drop. Opinion at *13-14. The Court explained that the "articles constitute corrective disclosures regarding InMode's statements about its pricing model and—in particular—that it does not discount its products." *Id*. at *14. "For instance, the October 12, 2023, *Capitol Forum* article states that InMode 'had routinely and significantly discounted the prices of its devices throughout the Class Period' . . . thereby meeting the requirement that the Plaintiffs plausibly plead that the corrective disclosure reveals the falsity of the prior statements." *Id*.

The revised revenue guidance, announced the same day the *Capitol Forum* article was published, ought to be considered together with the publication. *See*, *e.g.*, *Gilead* at 1052-58 (considering the Company's changed financial circumstances together with the warning letter,

---

[5] "A plaintiff is not required to show 'that a misrepresentation was the *sole* reason for the investment's decline in value' in order to establish loss causation." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005) (citation omitted), *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 2:24-CV-01219-MEMF-MRW

even though the letter was published *months before* the earnings release). The SAC pleads that InMode's "undisclosed practice of heavily discounting its products, particularly in an environment marked by high interest rates, caused InMode's revised revenue guidance." ¶¶208, 210-11. Indeed, the *Capitol Forum* even made an explicit connection between the revised revenue guidance and the discounting practice, noting that the large discounts may have affected InMode's revenues. ¶210. The SAC also pleads that "[t]he revised revenue guidance was a foreseeable consequence of the Company's undisclosed practice of heavily discounting its systems." ¶211. "On the news revealed on October 12, 2023, the price of InMode common stock declined . . . nearly 26%. ¶212. Thus, the SAC properly pleads loss causation for the 26% drop in connection with two intertwined theories: a corrective disclosure theory associated with the publication of the *Capitol Forum* article, and a proximate cause theory associated with the revised revenue guidance—each of which has been expressly approved by the Ninth Circuit.

*Second*, with respect to the December 6, 2023 drop associated with yet another revised revenue guidance, the SAC alleges that the Company's "practice of heavily discounting its products in North America, as well as its inability to continue marketing several of its products for improper purposes and without the permission of the FDA in North America, caused InMode's revised guidance." ¶¶213-14.[6] "The revised revenue guidance was a foreseeable consequence of InMode's undisclosed practice of heavily discounting the systems, and of the off-label marketing practices in North America." ¶214. "On this news, the price of InMode common stock declined . . . 12.15%." ¶215. Under *First Solar* and *Impax II*, these allegations suffice. *See also Garbaccio v. Starbucks Corp.*, 2025 WL 3611558, at *24 (W.D. Wash. Dec. 12, 2025) (invoking *First Solar* and finding loss causation sufficiently pled despite defendants' argument that "Plaintiffs 'incorrectly claim' that Starbucks' April 30, 2024 disclosures were 'corrective disclosures,' rather than timely disclosures that Starbucks failed to hit its prior earnings estimate coupled with 'revised forward-looking projections' based on new facts").

---

[6] In the U.S. alone, 95% of InMode's device sales are financed. ¶54.

Here, moreover, while not required, it is more than plausible to link Defendants' own proclaimed public reasons for the revised guidance to InMode's undisclosed practices used to artificially prop up its stock price. For instance, Defendants publicly blamed the October 12, 2023 revised guidance on constraints in *financing of medical equipment, marked by higher interest rates*, tighter leasing approval standards, and bottlenecks in loan processing. ¶208. Higher interest rates influence borrowing costs and spending decisions, so it is plainly plausible that Defendants had to offer even steeper discounts for their systems, impacting future revenues. [7] As for the December 6, 2023 revised guidance, Defendants publicly attributed it to "slowdown in platform sales, *mainly in North America*." ¶213. It is entirely plausible that Plaintiffs' inability to continue marketing (and thus selling) its platforms for improper off-label uses unapproved by the FDA, which implicates North America, as well as its practice of heavily discounting its products, impacted InMode's revenues in North America.

Thus, contrary to Defendants' claim, the SAC pleads more than "pure speculation untethered to any facts," as even Defendants' own public explanations behind the revised guidance are plausibly linked to the alleged misstatements. Defs' Br. at 10. At this stage of the litigation, the Court must construe Plaintiffs' allegations as true. Defendants remain free to challenge loss causation at summary judgment or at trial. *See First Solar*, 881 F.3d at 752; *see also Smilovits*, 119 F. Supp. 3d at 996 (explaining how Plaintiffs could ultimately *prove* loss causation through discovery, including expert reports); *Gilead*, 536 F.3d at 1057.

### 2. Defendants Rehash Arguments Already Rejected by the Court

Despite the fact that that the Court already sustained Plaintiffs' securities fraud claims arising from the pricing representations, Defendants impermissibly demand that the Court "revisit its conclusions concerning Plaintiffs' falsity and scienter allegations for the Pricing Statements." Defs' Br. at 14.

But the law of the case forecloses consideration of Defendants' recycled arguments. *See United*

---

[7] These changes can also explain why the discounting practices would take a much heavier toll on InMode's revenues.

*States v. Gartenlaub*, 2024 WL 4987258, at \*1-2 (9th Cir. Dec. 5, 2024) ("Gartenlaub's claims are barred by the law of the case doctrine. 'Under the "law of the case" doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case,'" noting that "Gartenlaub's habeas ***claims were decided explicitly by the district court*** and on direct appeal (quoting *United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012))); *see also Glazing Emps. & Glaziers Union Loc. #27 Pension & Ret. Fund v. iRhythm Techs., Inc.*, 2025 WL 3128193, at \*4 (N.D. Cal. Nov. 7, 2025) ("Defendants' motion for judgment on the pleadings contends Plaintiff has not adequately pled Mr. Blackford's scienter and loss causation, but as noted above, the Court already ruled otherwise. So, Defendants' motion is barred by the law of the case doctrine." (internal citation omitted));[8] *Strigliabotti v. Franklin Res., Inc.*, 398 F. Supp. 2d 1094, 1098 (N.D. Cal. 2005) ("The fact that defense counsel believes that the previous motion to dismiss was erroneously decided . . . is not a persuasive reason for the Court to exercise its discretion to revisit an issue that 'must have been decided explicitly or by necessary implication in the previous disposition.'" (quoting *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000))). Indeed, the Supreme Court has stated that, "as a rule," a court "should be loathe" to revisit its prior decisions under the law of the case doctrine absent very narrow "extraordinary circumstances." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988); *Arizona v. California*, 460 U.S. 605, 618, 619 n.8 (1983) (a court should not depart from a prior holding unless "convinced that it is clearly erroneous and would work a manifest injustice").

*Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035 (9th Cir. 2018), cited by Defendants (Defs' Br. at 14), is not to the contrary. There, unlike here, the case's unique facts resulted in a manifestly unjust outcome. The district court dismissed plaintiffs' claims with leave to amend. *Askins*, 899 F.3d at 1043. Then, "[a]ccepting the district court's invitation, plaintiffs filed an amended complaint, and included facts and claims that were different from those in the initial

---

[8] "The legal standards governing Rule 12(c) and 12(b)(6) are 'functionally identical,' as both permit challenges directed at the legal sufficiency of the parties' allegations." *Perez v. Wells Fargo & Co.*, 75 F. Supp. 3d 1184, 1887 (N.D. Cal. 2014) (internal citation omitted).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE  SECOND AMENDED COMPLAINT - 2:24-CV-01219-MEMF-MRW

12

complaint." *Id*. Unsurprisingly, the Ninth Circuit found it was "error" to "dismiss[] plaintiffs' amended complaint as barred by the law of the case doctrine" because doing so "held plaintiffs to a higher standard than if they had pleaded their amended complaint originally." *Id*.

Here, unlike in *Askins*, Plaintiffs have ***repleaded the same factual allegations and cause of action the Court already found adequate and plausible***. *Cf. id*. (rejecting the view that a "plaintiff is 'precluded' or 'barred' by the prior ruling," not that a defendant is properly precluded from getting another bite at the apple on a subsequent motion to dismiss where no change has been made to a claim the Court already upheld). Defendants have "not presented newly discovered evidence, shown the Court committed clear error, or raised an intervening change in the controlling law." *Grausz v. Hershey Co.*, 2024 WL 3836100, at *6 (S.D. Cal. Aug. 15, 2024) (explaining that "defendants' reliance on *Askins* is misguided" and refusing to revisit claims previously decided against them); *see also Sivakova v. American Honda Motor Co.*, 2025 WL 2324632, at *4 (C.D. Cal. July 17, 2025) (finding *Askins* "presented the exact opposite scenario and is simply irreconcilably different from the facts of this case," and rejecting Defendant's argument that it may assert or reassert arguments whenever an amended complaint is filed as "simply out of step with the practice in this Circuit and around the country," collecting cases); *accord*, *United States v. Lacey*, 2023 WL 3750776, at *2 (D. Ariz. June 1, 2023).

"Moreover, [Defendants]' request is better construed as a motion for reconsideration," and such motion "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Grausz*, 2024 WL 3836100, at *6 (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009)). *Accord*, *iRhythm*, 2025 WL 3128193, at *4 ("Defendants should have moved for leave to file a motion for reconsideration. . . . They did not. And they could not have successfully done so. . . . Defendants' new loss causation argument does not rely on any new material facts or a change of law, and their new scienter argument is based upon . . . evidence that existed at the time of Defendants' motion

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT - 2:24-CV-01219-MEMF-MRW

13

to dismiss."). A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). And "motions to reconsider are not a platform to relitigate arguments and facts previously considered and rejected." *Grausz*, 2024 WL 3836100, at \*6. Moreover, the time for Defendants to move for reconsideration has passed.

Here, Defendants made every conceivable argument in support of their first motion to dismiss, including that "context matters" in determining falsity. *Compare* Dkt. No. 77 at 28 ("context matters" (citation omitted)), *with* Defs' Br. at 14-15 ("[c]ontext matters" (citation omitted)). They unsuccessfully argued that "***read in context***, Mizrahy and Malca were discussing InMode's ***comparative*** pricing between its devices and services, and never represented that InMode did not offer any discounts on its devices." Dkt. No. 77 at 28. In their resurrected opposition, Defendants likewise argue that "[t]hose statements did not speak only to discounting in a vacuum. They mentioned discounting ***in the context of drawing comparisons*** between InMode's pricing for its platforms as compared to their attachments, and in comparison to competitors' pricing models." Defs' Br. at 16. The Court has already ruled on the issues raised here, holding that "the statement that InMode does not discount, ***even when taken in its full context***, is a material misrepresentation of InMode's true pricing model." Opinion at \*13. (emphasis added). "[T]he law of the case is that the identical allegations Defendants attack plausibly allege scienter and [falsity and loss causation]. The Court decided those questions 'expressly,' and yet 'Defendants' instant motion . . . requests the Court reconsider that ruling.' So, for this reason alone, Defendants' motion . . . must be denied." *iRhythm*, 2025 WL 3128193 at \*5 (citations omitted).

Defendants fail to meet the narrow exceptions to the law-of-the-case doctrine—***indeed, they do not even invoke them***. Courts may decline to apply the doctrine only "if (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE  SECOND AMENDED COMPLAINT - 2:24-CV-01219-MEMF-MRW

14

[subsequently]." *Gartenlaub*, 2024 WL 4987258, at *1. *First*, the decision "clearly" is correct. The FAC adequately alleged that Defendants misleadingly represented that InMode does not discount its platforms, *see*, *e.g.*, "we don't discount our platforms just to jack up the price of the consumables. *We set our platform for full price* and sell our consumable for very reasonable pricing" (FAC ¶147); "And *what we do differently [then our competitors] is we charge [physicians] the full price on the device*" (FAC ¶162); "they [physicians] *tend to forget that for our product platforms, they paid full price, and the competitor, maybe they get a discount* because they have the razor blade model" (FAC ¶168). The Court correctly found that, "when drawing inferences in the light most favorable to Plaintiffs . . . the statement that InMode does not discount, even when taken in its full context, is a material misrepresentation of InMode's true pricing model." Opinion at *13.

*Second*, there is no "intervening controlling authority" justifying this Court to take a drastic repositioning of its prior ruling. Indeed, Defendants do not (because they cannot) make this argument. *Sneed v. Talphera, Inc.*, 147 F.4th 1123 (9th Cir. 2025), cited by Defendants (Defs' Br. at 15) clearly is not such intervening controlling authority. As one district court put it bluntly, "*Sneed* would compel reconsideration if it announces new legal standards for pleading falsity and scienter that the Court did not apply in its Order. But it does not." *Garbaccio v. Starbucks Corp.*, 2025 WL 3496252, at *2 (W.D. Wash. Dec. 5, 2025). "As for falsity, *Sneed* states that courts must consider the 'context surrounding the statement.' But the Court already identified, and applied, this principle in its Order when analyzing the element of falsity." *Id*. "As the Court has already considered the full context of Defendants' challenged statements, including those that it declined to dismiss, it declines to 'rethink what it has already thought through.'" *Id*. (footnote omitted) (first quoting *Sneed*, 147 F.4th at 1131; then quoting *Innovative Sols. Int'l, Inc. v. Houlihan Trading Co.*, 2025 WL 1135037, at *1 (W.D. Wash. Apr. 17, 2025)). *Sneed* is also factually distinguishable. It involved a "snappy slogan" used in "good-faith" and defendants "simultaneously disclos[ed]" the information plaintiffs claimed was concealed. *Sneed*, 147 F.4th at 1127, 1134-35.

*Third*, no "substantially different evidence" exists that was not available at the time the Court issued its decision.

In any event, Defendants' arguments lack merit. Dissatisfied with the Court's ruling, Defendants invent a requirement that Plaintiffs must plead the prices at which *competitors* offer their products (or the competitors' pricing model), as well as the prices of InMode's platforms vs. the prices of their *attachments* (Defs' Br. at 16-20). This argument is illogical, for surely the falsity of Defendants' statements that they "do not discount" ***their platforms*** may be shown without these imagined comparisons. As Plaintiffs more than sufficiently pleaded with reference to confidential witnesses and Defendants' own documents, contrary to their representations, Defendants routinely discounted ***their platforms*** while claiming the opposite was true. *See* Dkt. No. 82 at 6-7 (discussing how InMode's own compensation plan showed that commissions were doled out with the expectation that the devices would sell at huge discounts, and noting that numerous confidential witnesses recounted that InMode heavily discounted its platforms anywhere up to 40% off, or more, the list price). Thus, as the Court properly concluded, Defendants' statements are actionable because they directly contradicted the reality that InMode ***did*** discount ***its platforms***.[9]

Because the Complaint does not need to plead particularities about the pricing model of InMode's competitors or the pricing of InMode's attachments, Defendants' invented arguments

---

[9] Defendants' cases (Defs' Br. at 18-19) are inapposite because there, unlike here, plaintiffs failed to plead facts rendering the statements misleading, or because the representations were too generic. *See Lamontagne v. Tesla, Inc.*, 2024 WL 4353010, at *12 (N.D. Cal. Sep. 30, 2024) (allegation "that there were safety issues with the technology does not suggest that it was false or misleading to assert that the technology was safer than regular human driving"); *Lloyd v. CVB Fin. Corp.*, 2012 WL 12883522, at *22 (C.D. Cal. Jan. 12, 2012) ("While plaintiffs allege that defendants falsely compared CVB's credit culture and loan quality favorably with its peer institutions," the "statements were generalized, vague and unspecific assertions, constituting mere 'puffery'"); *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1206-07 (9th Cir. 2016) (statement that "CVB's credit metrics are superior" to those of its peers is a "vague, optimistic statement[]."); *In re Gen. Motors Co. Sec. Litig.*, 773 F. Supp. 3d 429, 448 (E.D. Mich. 2025) (statement that Cruise AVs were "safer than a human driver" was not false because "the complaint contains no allegations allowing [such] comparison," leaving court to "speculate" from the alleged facts); *City of Hialeah Emps.' Ret. Sys. v. Peloton Interactive*, 153 F.4th 288, 297-98 (2d Cir. 2025) (statement about demand not misleading because it expressly "explained" which period it was comparing); *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 651-52 (E.D. Ill. 2020) (statement describing Pinnacle as one of the "fastest-growing companies" was too "vague" and "general").

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE  SECOND AMENDED COMPLAINT - 2:24-CV-01219-MEMF-MRW

directed to scienter and loss causation similarly fail. Defs' Br. at 18 n.8, 20. As this Court cogently explained, these elements were (and are) sufficiently pled. Opinion at *12-14 (finding that "Plaintiffs have properly pleaded the requisite facts showing a strong inference of scienter" and that "Plaintiffs properly pleaded that the statements regarding the pricing model caused injury under a theory of loss causation through corrective disclosures").

In sum, Defendants' arguments were rejected by the Court; they must now abide by the law of the case. In any event, their expanded arguments lack merit.[10]

### 3. The SAC Adequately Pleads Claims Against the Individual Defendants

As this Court held, Plaintiffs have sufficiently pled primary securities fraud violations under Section 10(b) of the Exchange Act by ***Defendants Mizrahy and Malca***, who were the makers of the allegedly false and misleading pricing statements. Opinion at *12-14, *20, & Appendix A (denying motion to dismiss the claims concerning the pricing statements made by Mizrahy and Malca, *i.e.*, Statements 11, 13, 17, 21, and 24). The Court also correctly upheld control liability claims under Section 20(a) of the Exchange Act against ***Defendant Lakhani***. Opinion at *14. It found that "given the allegations regarding Lakhani's control over the pricing discounts . . . Plaintiffs have properly pleaded his control liability with respect to these statements." *Id*.

Defendants cannot point to any clear error, manifest injustice, intervening controlling authority, or substantially different evidence presented that warrants the Court to reverse itself on the issue. As Plaintiffs have alleged in both the FAC and the SAC, Lakhani was the President of InMode's North America's division (FAC ¶20, SAC ¶21) and had the ultimate approval power over the aggressive discounts InMode offered. FAC ¶63, SAC ¶64 (explaining that Tier 5 of the commission matrix, which represented the largest discounts, required Lakhani's approval). These allegations are more than sufficient. "Since *Howard [v. Everex Sys., Inc.*, 228 F.3d 1057 (9th Cir.

---

[10] Defendants also ask the Court to revisit its holding that, when viewed in context, Defendants' single statement about its pricing strategy outside the United States is not misleading. (Defs' Br. at 16-17). But the SAC alleges that Defendants' practice of routinely discounting its systems was "companywide" and a "common practice." *See*, *e.g.*, ¶¶57, 60. Thus, the complaint plausibly pleads an actionable statement. The Court got it right the first time.

2000)], 'courts have found general allegations concerning an individual's title and responsibilities to be sufficient to establish control at the motion to dismiss stage.'" *Hefler v. Wells Fargo & Co.*, 2018 WL 1070116, at *13 (N.D. Cal. Feb. 27, 2018) (citation omitted); *Gonsalves v. Block, Inc.*, 2026 WL 42657, at *9 (N.D. Cal. Jan. 6, 2026) (similar).[11]

Defendants' invocation of *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217 (N.D. Cal. 1994), a district court case decided over three decades ago, is entirely unavailing. First, *Gupta* predates the Ninth Circuit's decision in *Howard*, 228 F.3d at 1057; *see also Abdo v. Fitzsimmons*, 2018 WL 11220494, at *10 (N.D. Cal. May 22, 2018) (discounting *Gupta*'s application in light of *Howard*). Second, *Gupta* is factually distinguishable because it involved the application of the *group pleading doctrine* which, "by its very nature . . . does not apply to oral statements. " 900 F. Supp. at 1239, 1242-43. Section 20(a) liability is not limited to written statements. *See* 15 U.S.C. § 78t(a). Hence, there is no valid basis for the Court to reverse itself.

Additionally, the Court found that the FAC properly pled that **Defendants Mizrahy and Malca** made misrepresentations concerning InMode's FDA-clearance for its products (Statements 1-5, and 15) and that those statements were made with scienter. Opinion at *14-15. Similarly, the Court held that the FAC adequately alleged that **Defendants Theodorou and Mizrahy** made false and misleading statements about the use of MorpheusV8 for intravaginal remodeling, vaginal lubrication, and urinary incontinence (Statements 14, 19 and 20), with scienter. Opinion at *17, *19. The Court concluded, however, that Plaintiffs failed to properly allege loss causation under the corrective disclosure theory associated with the *Capitol Forum* articles published in February and March 2023 because the FAC did not plead "with particularity that the injuries reported in those articles are due to off-label uses of the products." *Id.* at *15, *19.

The Court granted Plaintiffs leave to amend (*Id*. at *20) and the SAC adequately pleads loss causation for those statements under a proximate cause theory associated with the revised financial

[11] "'Whether [the defendant] is a controlling person is an intensely factual question, involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions.'" *Gonsalves*, 2026 WL 42657, at *9 (quoting *Flood v. Miller*, 35 F. App'x 701, 703 (9th Cir. 2002)).

guidance in December 2023. *See supra* at 4-11. This announcement was accompanied by a significant drop in the Company's stock price. ¶215. Accordingly, the SAC properly pleads primary securities fraud violations under Section 10(b) of the Exchange Act by Defendants Theodorou, Mizrahy and Malca stemming from the FDA-clearance representations, as well as from the safety and efficacy statements, which were misleading for failing to disclose lack of FDA approval for the uses touted.

## IV.    CONCLUSION

Defendants' motion to dismiss should be denied in its entirety. If the Court grants Defendants' motion, or any part of it, Plaintiffs respectfully request leave to amend.

Dated: January 26, 2026

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Emma Gilmore*

Jeremy A. Lieberman (admitted *pro hac vice*)
Emma Gilmore (admitted *pro hac vice*)
Villi Shteyn (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
egilmore@pomlaw.com
vshteyn@pomlaw.com

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

Orly Guy
Eitan Lavie
Ariel Sharon 4, 34th Floor
Givatayim, Israel 5320047
Telephone: +972 (0) 3 624 0240
Facsimile: +972 (0) 3 624 0111
oguy@pomlaw.com

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE  SECOND AMENDED COMPLAINT - 2:24-CV-01219-MEMF-MRW

19

eitan@pomlaw.com

*Counsel for Plaintiffs and for the Proposed
Class*

PROOF OF SERVICE

I hereby certify that on January 26, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Emma Gilmore*
Emma Gilmore

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE  SECOND AMENDED COMPLAINT - 2:24-CV-01219-MEMF-MRW